[Crim. No. 461. In Bank.—February 17, 1899.]

THE PEOPLE, Respondent, v. GEORGE C. OWENS, Appellant.

CRIMINAL LAW — TRIAL — CHALLENGES TO JURORS — SPECIFICATION OF GROUNDS.—A challenge to a juror must specify the particular ground of the challenge; and challenges specifying no ground other than that the challenges were "for cause," are insufficient. A challenge to a juror "under subdivision 2 of that section," without anything in the transcript to show what "that section" was, or to specify the ground of the challenge, or to show sufficiently that it was for actual bias, as defined in subdivision 2 of section 1073 of the Penal Code, is properly disallowed.

ID.—EXEMPTION FROM JURY DUTY—PERSONAL PRIVILEGE.—An exemption from service upon a jury is not a cause of challenge, but is the privilege of the person exempted.

ID.—ASSESSMENT TO PARTNERSHIP—QUALIFICATION OF JUROR.—The interest of each member of a partnership extends to every portion of its property; and an assessment upon the last assessment roll to a partnership of which a juror was a member, specifying his name as a member of the firm, sufficiently shows that he was "assessed" on the last assessment roll "on property belonging to him."

ID.—CHALLENGE FOR ACTUAL BIAS.—REVIEW UPON APPEAL.—The action of the trial court upon a challenge for actual bias will not be reviewed upon appeal, upon any question of fact, and will be reviewed only when the evidence is so opposed to the decision that the question becomes one of law.

ID.—OPINION BASED UPON PUBLIC RUMOR.—A juror who has formed an opinion founded upon statements in public journals, or upon pub-

lic rumor, is not disqualified thereby, if he states that, notwithstanding such opinion, he could and would act impartially and fairly upon the matters to be submitted to him, or would be influenced and guided solely by the law and the evidence.

ID.—PERMISSION OF CHALLENGE AFTER SWEARING OF JUROR.—The court may for cause permit a juror to be challenged after the juror is sworn, and before the jury is completed.

ID.—MODIFICATION OF INSTRUCTIONS ASKED—PRESUMPTION UPON APPEAL. When instructions requested by the defendant were indorsed, "Given as Modified," and the record does not show affirmatively that part of the instruction asked was given and part refused, it must be presumed upon the appeal, in favor of the action of the court, in the absence of proof to the contrary, that the modification consisted in something added by way of correction or otherwise.

ID.—HOMICIDE—INSANITY—IRRESISTIBLE IMPULSE—INSTRUCTIONS.—Upon the trial of a defendant accused of murder, where the defense was insanity, offered instructions embodying the doctrine of irresistible impulse, which is not recognized in this state, are properly refused.

ID.—ATTEMPT AT SUICIDE—INSTRUCTION—QUESTION FOR JURY.—The question whether an attempt at suicide by the defendant justifies an inference of insanity, is one of fact for the jury; and a requested instruction that such attempt is to be taken as evidence of insanity is properly refused.

ID.—EVIDENCE—DYING DECLARATION—SENSE OF IMPENDING DEATH—WAIVER OF SPECIFIC OBJECTION.—Upon the trial of a defendant accused of murder, the objection to the admissibility of the dying declaration of the deceased, for want of sufficient preliminary proof that the declaration was made under a sense of impending death, is waived if not specifically urged. Such objection is not included in the general objection that the evidence was immaterial, irrelevant and incompetent.

APPEAL from a judgment of the Superior Court of Stanislaus County and from an order denying a new trial. Wm. O. Minor, Judge.

The facts are stated in the opinion of the court.

L. J. Maddux, and P. H. Griffin, for Appellant.

W. F. Fitzgerald, Attorney General, and W. H. Anderson, Assistant Attorney General, for Respondent.

VAN DYKE, J.—Defendant was informed against for the murder of his wife. He was tried and convicted of murder in the first degree, the jury fixing the penalty of death. His motion for a new trial was overruled, and, being sentenced, he

prosecutes this appeal from the judgment of conviction and the order denying his motion for a new trial. The story in reference to the commission of the crime is told by his daughter, Mrs. Tiedeman, who was the only witness of the murder excepting the defendant. She says: "George C. Owens is my father. I had been married about two months. My mother, Ruth E. Owens, had been living with me and my husband all but about one week of our married life. She came to live with us about a week after we were married. I was married at my sister's, Mrs. Charles Daunt. I was not married at home; my father always said he opposed my marriage. Prior to the time that my mother came to live with me she had commenced proceedings for a divorce against my father. I saw my father on the thirteenth of December, 1897, in the morning. He came to my house. I first saw him as he came in the gate and up the steps. My mother and myself were in the kitchen at the time. We were cooking breakfast. Nobody else in the house except me and my mother. My father came into the house. He came into the side door. I opened the door for him. There was a table in the room there, a small table in the kitchen. There is a window there, and the table was right between the table [window] and the door. My father sat right near the stove. The stove was in the corner of the room. At that time my mother was lifting the mush, and we both sat down to the table then to eat our breakfast. When my father came in I said to him, 'Good morning, pa.' He said, 'Good morning.' He said it pleasantly, seemed to. I removed his hat for him and hung it on a nail back of him. He then began to talk to mamma; asked her if she was ready to go home to him. I had asked him before this to remove his overcoat, as it was a little warm in the room, and he got up and took his overcoat off and laid it down on his chair, and sat down again. Then he asked her if she had thought of coming back to him, and she said she had not been thinking of anything of that kind yet, and then I said to him I thought being as they were both happier apart I thought they had best live apart and be friends and live apart. I thought it would be better for them. They both looked better. I said that in as pleasant a way as I knew how. He jumped up then, and I thought he was going to slap me for

what I had said and I ran out of the back door. There was a screen over the door, and I had to open the screen to get out. It was a spring screen, and it slammed back. Mamma and I both jumped up from the table, and I ran out of the door. I turned round to look, and he pulled his pistol and commenced to shoot. He pulled his pistol from his pocket—from his right side somewhere. I saw him pull his pistol, and mamma said, 'O, George, don't shoot,' and [he] did not pay no attention and shot her through the stomach. He was right close to her. He held the pistol pretty near to her. She said, 'O, George, don't shoot.' She said that before he shot. After he fired she said, 'O, George, how could you do that?' At that time I was out on the porch looking in. He then came to the door and fired at me—fired at me the width of the porch, fired through the screen at me. It struck me through the left breast. It came out behind. The ball struck me about here, and came out behind about here (indicating). Then he commenced to load up his pistol again, and I thought—well, mamma fell after he went back and shot her a second time. He went back from shooting me and shot her through the breast. I saw him put the pistol up to her, right to her, right up close to her breast and fire, and then he commenced to load up again. He commenced to load before she fell—commenced to load as she fell. I thought she was dead, and I saw him commence to load, and I ran around on the side of the porch. She fell across the back door. She was coming toward me when she fell. She fell right up close to the door. She was attempting to come toward the back door when she fell, and when she fell I thought she was dead, and, seeing him load up again, I ran. I stood on the side porch and jumped up and down for a while and holloed for help. Then I saw one of the ladies coming running, and that gave me courage to run, and as I went out of the gate he shot two more shots. I stood there after he had shot me, for my mother's sake. I could not run. I was sort of transfixed to the spot. After that I ran across the street to Mrs. Reinhart's. I have now told everything that transpired before the shooting at the house—everything that was said that I can remember of. My mother gave him no cause whatever to do the shooting. Nobody attempted to strike him or injure him in any way."

The defense was insanity on the part of the defendant.

The points urged for a reversal are technical, and do not go to the merits. Many of them are in reference to the impaneling of the jury, disallowing challenges on the part of the defense, and allowing challenges on the part of the prosecution. It is claimed that the court erred in disallowing defendant's challenges to ten of the jurors impaneled, to wit: Dudgeon, Delemater, Corson, Hill, Cogswell, Laughlin, Keaton, Howard, Donkin and McDonald. Juror Cogswell was challenged "for cause" merely. As to Laughlin the transcript shows, "thereupon the defendant challenged him." As to Keaton the transcript shows "the defense thereupon challenged him for cause." As to Howard, "thereupon the defendant challenged him for cause."

These challenges were manifestly insufficient. A challenge of a juror must specify the particular ground of challenge. (*People v. Dick,* 37 Cal. 277, 279; *People v. Renfrow,* 41 Cal. 37, 38, 39; *People v. Buckley,* 49 Cal. 241, 242; *People v. Cotta,* 49 Cal. 166, 169; *People v. Cochran,* 61 Cal. 548, 549.)

The challenge to juror Delemater was, "We challenge the juror under subdivision 2 of that section." There is nothing in the transcript to show what "that" section was, and the challenge was not specific enough, and was properly disallowed under the authorities already cited.

If it was the intention, however, to challenge the juror for actual bias, as defined in subdivision 2 of section 1073 of the Penal Code, then the challenge is not sufficient, and was properly disallowed.

Juror Cogswell, in addition to the challenge for cause already stated, was challenged "on the ground of being an officer in the county, under section 200 of the Code of Civil Procedure," it appearing on his *voir dire* that he was a director of the Turlock irrigation district. The section of the Code of Civil Procedure referred to relates to persons exempt from jury duty, to wit, a person holding a county, city, and county or township office. If a director in an irrigation district were considered as holding an office designated in said section of the code, still "an exemption from service on a jury is not a cause of challenge, but the privilege of the person exempted." (Pen. Code, sec. 1075.)

In addition to a challenge for "actual bias," juror M. E. Mc-Donald was challenged "upon the ground that his name does not appear upon the assessment-roll—last assessment of the county for property assessed to himself." It appeared that the assessment-roll showed an assessment to J. R. and M. E. Mc-Donald, and the juryman was M. E. McDonald. The law requires that a person to be competent as a juryman must be "assessed on the last assessment-roll of the county or city and county on property belonging to him." (Code Civ. Proc., secs. 198, 199; Pen. Code, sec. 1072.) The challenge was based upon the fact that it did not appear by the assessment-roll that the property was assessed to the juror separately. The law does not require the name of the juror to be separately placed upon the assessment-roll, but requires that he should be assessed on the last assessment-roll "on property belonging to him." The juror, as a member of the firm of J. R. and M. E. McDonald, was assessed on property belonging to him. "The interest of each member of a partnership extends to every portion of its property." (Civ. Code, sec. 2402. See, also, *United States v. Hackett,* 29 Fed. Rep. 848.)

Jurors Dudgeon, Corson, Hill, Donkin, and McDonald were challenged for "actual bias." "This court is only allowed to review an order denying a challenge to a juror upon the ground of actual bias when the evidence upon the examination of the juror is so opposed to the decision of the trial court that the question becomes one of law, for it is only upon questions of law that this court has appellate jurisdiction in criminal cases." (*People v. Fredericks,* 106 Cal. 554; and also *People v. Wells,* 100 Cal. 227.)

The transcript shows that from the examination of the jurors it appears that the bias complained of was opinions founded upon statements in public journals, or upon public rumor, and each juror in effect stated "that he could and would, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him—that is, that he would be influenced and guided solely by the law and the evidence." None of them were disqualified within the rule.

The court allowed the challenges of the prosecution to the jurors Bennett, Spencer, Gilbert, Cox, Bailey, Baer, Turpin, and

Hutchins. Bennett testified in substance that owing to his friendship for the defendant he would be inclined to favor him "just as far as possible," and that he would be affected by that friendship to a certain extent. Gilbert was excused because he thought that his friendship for the parents of the defendant would influence him in arriving at a verdict. Cox testified that his friendship for certain members of the family of defendant (defendant's brothers) would influence him in arriving at a verdict. The same is true of juror Bailey. Baer was an intimate friend of defendant's near relatives, and was certain that such friendship would affect his verdict. The court, after challenge, found that the juror Turpin was not upon the assessment-roll of the preceding year. It was shown by the examination of Hutchins that he would disregard the instructions of the court on the law of irresistible impulse. This court can only review the decision of the lower court in allowing a challenge for actual bias where there is such an absence of evidence to sustain the decision that the matter becomes a question of law. (Pen. Code, sec. 1170; *People v. Fredericks, supra,* and the other cases cited in connection therewith.)

Juror Spencer was excused for cause after he had been sworn in to try the case, but before the completion of the jury. He voluntarily asked to be excused, giving the following among his reasons: "Well, for one or two reasons, the family, Mr. Owens' family, are members of the congregation where I preach quite often, and I might be somewhat favorable to them; and then, again, this feature of capital punishment. When it was asked me, if it was proved beyond the shadow of a doubt—that doubt business there—I was a little undecided about it yesterday, and still my mind is; yet at one time I said that I wasn't in favor of hanging a man if there was any possible way of getting around it. Of course, if it is a sure thing and I know a thing, why then I would not be against it, of course"; and upon further examination, conducted by the court and counsel, it was shown that the juror in arriving at his verdict would be influenced by his friendship for the relatives of the defendant. The court may for cause permit a juror to be challenged after such juror is sworn, and before the jury is completed. (Pen. Code, sec. 1068; *People v. Durrant,* 116 Cal. 179, 197.)

The Penal Code, section 1227, says: "Either party may present to the court any written charge and request that it be given. . . . . If part be given and part refused, the court must distinguish, showing by the indorsement what part of the charge was given and what part refused." It is claimed by counsel for the defendant that the court below violated this provision in instruction 3 requested by defendant, and instructions 3 and 9 requested by the prosecution. Each of these instructions was indorsed by the court, "Given as modified." "Modified" does not necessarily import that part was given and part refused. The modification may have consisted in something added by the court by way of correction or otherwise, and, as every intendment in favor of the correctness of the court's action must be indulged, it may be presumed that these particular modifications did consist in something added, and not in refusing part and giving part.

It is also complained on the part of the defendant that the court erred in refusing instructions 7, 8 and 9, requested by the defendant. These offered instructions embody the doctrine of irresistible impulse, which is not recognized in this state. (*People v. Pico*, 62 Cal. 54; *People v. Hoin*, 62 Cal. 120; 45 Am. Rep. 651; *People v. Ward*, 105 Cal. 335, 343; *Marceau v. Traveler's Ins. Co.*, 101 Cal. 340.) In the latter case it is said: "We cannot recognize the so-called plea of irresistible impulse of itself as a legal defense to any charge of felony."

Instruction 11, requested by defendant and refused by the court, is as follows: "You are instructed that the fact that the defendant attempted to commit suicide is to be taken as evidence of insanity." The case of *People v. Messersmith*, 61 Cal. 246, cited by defendant's counsel, does not support his contention. There it was said: "But where a court unqualifiedly tells a jury as matter of law that an assumed fact does not prove a fact in dispute, it is error. Such a charge should not be given when it is necessary to draw an inference of fact. An inference of fact, where it does not arise as a presumption of law, must be drawn by the jury whose duty it is to pass upon the insufficiency of the evidence." The instruction requested and refused was improper, as it made the mere fact of an attempt to commit suicide in itself evidence of insanity, whereas it is only one phase

of the evidence, to be considered together with all the other evidence in the case.

Counsel for defendant contend that error was committed in the admission of the dying statement of the deceased, because it was not read over to her after it was written, and was only the substance of the questions and answers, and because the witness for the defense called after the admission of this statement gave testimony tending to show that when the statement was made by the deceased she did not have the sense of impending death. The only objection that was urged to the admission in evidence of the dying statement was "on the ground that it is immaterial, irrelevant and incompetent." This does not cover any of the objections now urged against its admission. It was material, relevant, and, in the absence of any more specific objection, was competent. "We have repeatedly held that counsel must make their objection in such a manner as to leave no doubt as to the precise ground upon which it is placed. We do not think that that was done in the present case, and we do not think that we should be justified in reversing the judgment on this ground." (*People v. Frank*, 28 Cal. 519. See, also, *People v. Mahoney*, 77 Cal. 532; *Satterlee v. Bliss*, 36 Cal. 507; *Mayo v. Mazeaux*, 38 Cal. 442; *Crocker v. Carpenter*, 98 Cal. 421, 422; *Colton etc. Co. v. Schwartz*, 99 Cal. 278, 284.) In *People v. Loui Foo*, 112 Cal. 23, this court, after referring to a number of cases on the point in question, say: "The consensus of opinion, as illustrated by these cases and many others, is that where the proffered evidence is imperfect by the lack of preliminary proof which may or may not be supplied by the party offering the evidence, the objector must specifically point out the defect by his objection, and, if he fails to do so, it is waived, and the general objections of 'immaterial, inadmissible, irrelevant, and incompetent,' made when the evidence is offered to the jury, are not sufficient to warrant an investigation on appeal of the insufficiency of such preliminary proof."

There was no motion to strike out this dying declaration after the defendant's witness gave testimony tending to show that it was not made under a sense of impending death, which testimony, however, only had the effect to raise a conflict in the evidence as to the state of decedent's mind at the time referred

to. This court cannot say that the ruling of the court below in this behalf was not correct.

From the examination of the whole record we see no error on the part of the trial court, and the judgment and order appealed from are, therefore, affirmed.

Garoutte, J., Harrison, J., and Temple, J., concurred.

McFARLAND, J., concurring.—I concur in the judgment of affirmance, and also in the opinion of Mr. Justice Van Dyke, except that part thereof which discusses the subject of the allowance of challenges of the prosecution to certain jurors. I do not object to the correctness of what is said on that subject; but the allowance of a challenge by the prosecution is not a subject of exception under section 1170 of the Penal Code. That section gives no exception to a decision allowing a challenge; and although it was held in *People v. Wells,* 100 Cal. 227, following a concurring opinion in *People v. Wong Ark,* 96 Cal. 135, that a defendant has a constitutional right to except to an order disallowing a challenge for actual bias interposed by him, still that ruling does not give him the right to except to an order of the court allowing a challenge by the prosecution; he is entitled only to a fair jury.

Henshaw, J., concurred.