(No. 14537.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ISIDORE GOLDBERG, Plaintiff in Error.

*Opinion filed April 19, 1922.*

1. CRIMINAL LAW—*what is gist of offense of robbery.* Robbery is the felonious and violent taking of money, goods or other valuable thing from the person of another by force or intimidation, and if neither force nor intimidation is present the crime is not proved.

2. SAME—*robbery is against the will of the owner if consent is given by unauthorized party.* There is no robbery if the taking of the property is with the consent or at the direction of the person whom the accused is charged to have robbed, but the consent must be given by the victim or someone duly authorized to represent him; and the accused cannot maintain the defense that he staged the hold-up by request of a party, who had no right to consent thereto.

3. SAME—*purpose of secrecy of grand jury proceedings.* The law requires secrecy in grand jury proceedings for the purpose of preventing the escape of the accused, to secure freedom of deliberation and opinion among the grand jurors, and to prevent the testimony produced before them from being contradicted at the trial by subornation of perjury; and such secrecy is not for the protection of the witnesses but in furtherance of public justice.

4. SAME—*testimony of witness before grand jury may be used to impeach his testimony at trial.* The testimony of a witness before the grand jury is not a privileged communication, and for the purpose of impeaching the witness at the trial a grand juror or other proper person knowing the facts may be called to testify; and the same rule applies to the testimony of the accused given before a grand jury when it was investigating a charge against his alleged accomplice.

5. SAME—*abstract must show that it includes all instructions given—waiver.* Before the refusal to give certain instructions will be considered by the Supreme Court as a matter affecting the validity of the judgment the abstract must show that the instructions set out therein are all the instructions that were given on the trial, and the brief or argument should point out what refused instructions should have been given and wherein the court erred in refusing them.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. ANTON T. ZEMAN, Judge, presiding.

JOHN F. TYRRELL, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, and WILLIAM SCOTT STEWART, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Isidore Goldberg, and Meyer Cohn, George Cohn, Ben Lieberman and Benjamin Malichefsky, were indicted by the December, 1919, grand jury of the criminal court of Cook county, the first count of the indictment charging robbery and the second count charging receiving stolen property. Plaintiff in error, upon his motion therefor, was granted a separate trial, and on his trial he was convicted of robbery. This writ of error is prosecuted to review the judgment entered on that verdict.

The evidence shows that the plaintiff in error, with the Cohns and Lieberman, entered the jewelry store and pawnshop of Morris Klein, Samuel Klein and Sam Greenfield, partners doing business as the Klein Loan Bank, about 3:30 P. M. on December 8, 1919; that all of them were armed with revolvers; that they ordered Greenfield and Samuel Klein and a customer, the only persons then in the store, to hold up their hands and to stand with their faces to the wall at the back of the store; that they took from the store jewelry, Liberty bonds and cash amounting to about $38,000; that about $25,000 worth of this property has been recovered on information received from plaintiff in error; that plaintiff in error and the Cohns were arrested two days following the robbery; that plaintiff in error at first denied any knowledge of the crime; that later he admitted knowledge of the crime but denied participation in it; that later he confessed the robbery and told where most of the property stolen could be found.

Plaintiff in error testified in his own behalf. He admitted his connection with the robbery and defended on the ground that the hold-up was staged and that it was done at the request of the proprietors of the store for the purpose of defrauding insurance companies. He testified that he was employed at the time as night superintendent of chauffeurs employed in the taxicab service of the Hotel LaSalle; that his superior was Jay Abrams, chief house officer of the hotel; that Abrams told him on Saturday, December 6, that he was interested in the Klein Loan Bank; that it was in bad shape financially; that the proprietors wanted the store robbed and that he wanted plaintiff in error to stage a robbery the next day; that while he was talking with Abrams, Morris Klein came into Abrams' office at the Hotel LaSalle and that he remained there in conversation with Abrams for ten or fifteen minutes; that Klein did not say anything and that Abrams did all the talking; that Abrams introduced him to Klein and said, "This is the fellow I was telling you about;" that he did not hear any of the rest of the conversation; that he saw Abrams again Sunday morning and told him that he would not stage the hold-up by himself, for the reason that it would look too much like a frame-up for a single man to hold up the place in daytime; that Abrams told him to get some help and that he would provide them with guns; that Abrams agreed to give him $5000 to stage the hold-up,—$2000 for himself and $1000 for each of three assistants; that they planned to stage the hold-up Monday morning, but there were too many customers in the store during the forenoon and the hold-up was postponed until afternoon; that after the robbery was staged he delivered about half of the loot to Abrams at the hotel and that he locked it in a vault; that when he returned to Abrams' office the following night he found some city detectives there; that Abrams called him to one side and told him not to be frightened, because he would take care of him;

that Abrams told him to go with the detectives and to
point out some fellow who had a record as the fellow who
robbed the store, thereby throwing them off their track;
that he thought Abrams was likely to double-cross him and
that he made him return the jewelry and bonds to him;
that Abrams returned them to him and that he walked all
over the west side of Chicago with the detectives with
$18,000 worth of property in his pocket; that he did not
want to point out some innocent fellow as the robber and
so no one was arrested; that he was arrested the next day
and that Abrams came down to the station and asked him
to return the property; that he refused; that they took
him to the State's attorney's office and that Abrams and
sergeant Miller talked to him for about twenty hours, and
that he finally delivered part of the property to Miller on
Abrams' promise to take care of him.

Abrams and the proprietors of the store all denied the
story of plaintiff in error in every detail.   They testified
that Abrams was not in any way interested in the store and
that he never had any conversations or dealings with the
proprietors before the robbery.   It was shown on the trial
that plaintiff in error had told several different stories about
the robbery and his connection with it.   He does not claim
that he had an arrangement with the proprietors of the
store, or either of them, to stage this robbery, and there
is no proof in the record that Abrams was authorized to
arrange for a fake robbery of the store.

Robbery is the felonious and violent taking of money,
goods or other valuable thing from the person of another
by force or intimidation.   Force or intimidation is the gist
of the offense of robbery, and if neither of these elements
is present then the crime of robbery is not proven.   (*Hall
v. People,* 171 Ill. 540; *People* v. *Jones,* 290 id. 603.)   The
taking must be against the will of the person from whom
the property is taken, and if the taking is with the con-
sent or at the direction of the person whom it is charged

the accused robbed there is no robbery. (*Love* v. *People,* 160 Ill. 501 ; *State* v. *Hull,* 33 Ore. 56, 54 Pac. 159.) The consent, however, must be given by the victim or someone duly authorized to represent him. If the jury had believed the story of plaintiff in error, which they evidently did not, they would not have been justified in acquitting him, for the reason that there is no proof in the record that any of the proprietors of the store consented to the assault and · the larceny by plaintiff in error. The conviction of plaintiff in error is fully warranted by the evidence.

Plaintiff in error testified before the March, 1920, grand jury when the grand jury had under investigation Abrams' connection with this robbery. The story told by plaintiff in error in his testimony before the grand jury was different from the story told by him on his trial, and the State's attorney used a transcript of his testimony before the grand jury for the purpose of impeachment. Having laid a proper foundation for impeachment the State's attorney called a stenographer, who testified that he took in shorthand the questions asked plaintiff in error and the answers given by him before the grand jury, and then, in response to questions by the State's attorney, he testified that certain questions were asked and certain answers were given while the plaintiff in error was being examined as a witness before the grand jury. Plaintiff in error contends that all proceedings before the grand jury are secret and privileged, and that the court erred in permitting the State's attorney to prove the testimony given by plaintiff in error as a witness before the grand jury. The grand jury before which plaintiff in error testified was not the grand jury which returned the indictment against him, and so no question is presented with respect to the validity of the indictment. There is no showing that the stenographer was not a member of the grand jury or an assistant State's attorney or some other person properly in the grand jury room. The only contention made is that all proceedings before

the grand jury are secret and that they cannot under any circumstances be revealed. The statute provides that "no grand juror or officer of the court or other person shall disclose that an indictment for felony is found or about to be found against any person not in custody or under recognizance, except by issuing process for his arrest, until he is arrested; nor shall any grand juror state how any member of the jury voted or what opinion he expressed on any question before them." (Harker's Stat. p. 1550.) In furtherance of justice and upon grounds of public policy the law requires that grand jury proceedings shall be regarded as privileged communications and that the secrets of the grand jury room shall not be revealed. The reasons usually given for this requirement are to prevent the escape of the accused, to secure freedom of deliberation and opinion among the grand jurors, and to prevent the testimony produced before them from being contradicted at the trial by subornation of perjury. (*Gitchell* v. *People,* 146 Ill. 175.) These purposes are largely accomplished after the prisoner is in custody and placed on trial. The rule of secrecy concerning matters transpiring in the grand jury room is not designed for the protection of witnesses before the grand jury but for the protection of grand jurors and in furtherance of public justice. A witness has no privilege to have his testimony treated as a confidential communication but must be considered as testifying under all the obligations of an oath in a judicial proceeding, and hence his testimony may be disclosed whenever it becomes material to the administration of justice. A grand juror or other proper person may therefore testify as to whether the testimony given by a witness before the trial jury corresponds with that given by him before the grand jury, for the purpose of impeaching the witness before the trial jury. (12 R. C. L. 1039; *Granger* v. *Warrington,* 3 Gilm. 299.) In *Hoge* v. *People,* 117 Ill. 35, this court said: "It was competent to prove by members of the grand jury that the

witnesses had testified differently before the grand jury. But the attention of the witnesses should have been first called to the testimony they gave before the grand jury and they should then have been allowed to state whether they did testify as claimed. If they had admitted that they did, they would have been then entitled to give any explanation they could why their present testimony was different. If they had denied that they had so testified the defendant would have been entitled to contradict them." This is the procedure that was followed in the instant case. In *Bressler* v. *People,* 117 Ill. 422, it was said: "When the indictment is returned and the defendant arrested and placed upon trial neither the statutory nor common law reasons for secrecy can apply. There can be no reason, then, why evidence given before a grand jury should not be made known and proved if the ends of justice require it. A contrary course would tend to defeat instead of to promote justice and be directly in opposition to the tendency of the age, which is to enlarge rather than to contract the sources of evidence." There was no error in the methods used to impeach the testimony of plaintiff in error.

It is further contended that the court erred in refusing certain instructions offered by plaintiff in error. Many of the given instructions are omitted from the abstract and a condensed description is inserted in their stead. The abstract does not show that the instructions set out therein are all the instructions that were given on the trial, and so the complaint that the court refused to give certain instructions for plaintiff in error cannot be considered as a matter affecting the validity of the judgment. (*People* v. *Adams,* 289 Ill. 339; *People* v. *Allegretti,* 291 id. 364.) Furthermore, plaintiff in error does not point out in his argument what refused instructions should have been given and wherein the court erred in refusing them, so the error, if any, is waived. *People* v. *Hohimer,* 271 Ill. 515.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*