[Crim. No. 2257. Second Appellate District, Division Two.—November 7, 1932.]

THE PEOPLE, Respondent, v. RALPH A. LEAVITT et al., Defendants; LANCE CURRYER, Appellant.

Lois B. Preston for Appellant.

U. S. Webb. Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

THOMPSON (IRA F.), J.—The defendant Curryer, together with Ralph A. Leavitt, was charged by an information filed by the district attorney of Los Angeles County with the crime of burglary, Curryer also being charged with a prior conviction. Curryer admitted the prior. Separate trials were granted and he was convicted. This is an appeal from the judgment and the order denying his motion for a new trial.

As near as we are able to determine from the briefs of appellant it is contended that the judgment should be reversed on the following grounds:

1. The court erred in compelling a witness to answer certain questions over the protest of the witness that to do so might incriminate her.

2. The verdict is not supported by the evidence, and,

3. The court erred in not rejecting the admission of appellant made to certain officers and in refusing to exclude the jury while appellant's counsel was endeavoring to demonstrate that the statements were not freely and voluntarily made.

Turning to the first question of whether the court committed error in compelling the witness Novella Tennis to answer certain questions over her protest that the answers might tend to incriminate her, we find no merit. Assuming a fact, which we do not find borne out by the record, to wit:

That the trial judge encroached upon the constitutional rights of the witness how can it make any difference to the appellant? The privilege of not testifying where the answers may have a tendency to incriminate is one that is personal to the witness, and in which the defendant has no voice. If the witness had testified fully without complaint, the appellant could not be heard to complain.

█ It may be argued under this claim of error that the district attorney was permitted to cross-examine his own witness. What he did when it became apparent that the witness was inclined not to answer even the preliminary questions was to confront her with the transcript of the preliminary hearing and ask her if reading certain designated portions refreshed her recollection. No objection was interposed on the ground that the prosecutor was attempting to cross-examine or impeach his own witness. Twice an objection based upon the general ground that the answer called for was incompetent, irrelevant and immaterial was lodged. Each time it was followed by argument which indicated that defense counsel was seeking to encourage the witness to decline to answer questions on the ground that to do so might incriminate her and to shut out the testimony in this manner. It is a familiar rule of law that error may not be predicated upon the improper admission of testimony unless the real ground of its inadmissibility is called to the attention of the court by the proper objection.

█ We therefore proceed to examine the testimony to see if it be sufficient to sustain the verdict. On the evening of March 30th the home of H. C. Pratt and his wife was entered during their absence through a window, and two fox furs, a revolver, and about $4 in change stolen. On the following evening Mrs. Pratt observed two men drive slowly by her home in a light-colored Ford car with a California license number 9R–1096, gazing intently at the house, and then park about six flats away. She testified that the appellant looked like one of them, but that he was not driving— the other defendant was at the wheel. Her husband testified to like effect. On April 2d the appellant was arrested as he sat in the rumble seat of a Ford roadster, license number 9R–1096. Inside the automobile was found a banjo, several suitcases and traveling bags, a portable typewriter, a large typewriter and a small radio. The appellant asserted

ownership of one of the typewriters, the radio, and a camera, which was also in the car. The other defendant, Leavitt, and one Sandberg were standing beside the car. Leavitt said it belonged to him, but the certificate of registration showed that it belonged to a person named Katherine McCormick. About twenty minutes later the officer went into the house before which the Ford had been standing and found a miscellaneous assortment of cigars, cigarettes, chewing gum, etc., in two large suitcases under the bed. He also found one of the fox furs stolen from the Pratt home. This fur was claimed by Novella Tennis, who, together with her sister, was in the house at the time. Officer Johnson told from the witness-stand about a conversation he had with appellant after the arrest. He testified with respect thereto as follows: "I told Mr. Curryer that Mrs. Pratt had identified her fur and that she had seen him and Mr. Leavitt and Mr. Sandberg . . . in the jail and she had told us that Mr. Curryer and Mr. Leavitt were the ones that she had seen in front of her place on the night of the 31st of March. He says. 'Yes, I know she recognized me.' I says, 'She also has missed another fur, a new fur and much larger.' And he told me that that fur had been sold. I asked him where and he said in the Foreman Building." The same officer also testified that later he drove past the Pratt residence with the appellant and the latter pointed out the house and the window through which they entered. He also testified of going to an office in the building mentioned together with another officer and Miss Tennis, where the larger fur was found and subsequently identified. A witness was called who testified that he bought this last fur from Miss Tennis on the afternoon of March 31st, and that the appellant looked like the man whom he saw leave their place of business with Miss Tennis. While Miss Tennis declined to answer most questions put to her, she did say she had known appellant for about four weeks prior to the robbery, and that Leavitt had a light-colored Ford roadster.

It needs no argument to demonstrate the sufficiency of the evidence to support the verdict. While it is claimed that appellant was not connected with the offense, it is patent that this assertion is without merit. Indeed, we cannot see how the jury could have arrived at any other verdict.

■ With respect to the third and last contention it is sufficient to say that the officer who testified that the admissions were made to him swore without equivocation that the statements were freely and voluntarily made to him without promise of reward or immunity. His testimony does disclose that in a conversation on the day following that upon which admissions were made the appellant was told that they (the police) had some property that they did not have reports on and that if he would "clean up this job . . . we didn't think we would file those cases". The conversation then had related to property not involved in the charge of which appellant was convicted. It is apparent from our recital that the judge, in the first instance, was justified in receiving the statements into evidence and the jury was authorized in concluding that they were freely and voluntarily made.

■ Counsel says she was not permitted a *voir dire* examination. The fact is that she was allowed ample opportunity so to do, the trial judge saying to her, "You may examine on *voir dire*, make any showing you wish, as to whether or not the statement was free and voluntary." And this statement was followed by cross-examination of the witness by defense counsel.

■ Nor is there any merit in the contention that the jury was not excused during the examination. This argument is answered by the case of *People* v. *Black*, 73 Cal. App. 13 [238 Pac. 374].

Judgment and order affirmed.

Craig, Acting P. J., and Stephens, J., *pro tem.* concurred.