[Crim. No. 4117. Second Dist., Div. Two. Oct. 17, 1947.]

THE PEOPLE, Respondent, v. ALPINE CALLIHAM, Appellant.

Gladys Towles Root for Appellant.

Fred N. Howser, Attorney General, and Alberta Gattone, Deputy Attorney General, for Respondent.

MOORE, P. J.—Having been convicted by the court of robbery and of assault with intent to commit rape, defendant seeks a reversal of the judgment on the grounds that no force was applied in the robbery and no resistance was made to the rape; that is, the evidence is not sufficient proof of the crimes.

The prosecutrix testified that about 12:30 o'clock on a Sunday morning, as she was walking on Hooper Avenue in Los Angeles on the way to visit her brother, she was grabbed around the neck and pulled backward to a dark place behind some garages. The man laid her backward, pulled off her slacks and pants, zipped open her red purse which had fallen beside her, removed its contents and searched the pockets of her slacks. He then put down the purse and lay upon her for five minutes, attempting to perform an act of sexual intercourse while she kept moving. She did not scream or try to rise because she was "too scared . . . was scared to death, and couldn't make no sound." During such performance the police officers arrived and her assailant jumped up and ran.

That the victim was choked in her struggle with appellant was proved by Mrs Bjarklund, who occupied the house next to the alley. She heard "a lot of heavy breathing" after a noise like a man staggering into her yard as he hit against her house. She heard someone say twice: "Don't choke me," and a noise as if someone had fallen at the side of her house. She asked her neighbor to call the police. After the officers arrived, the victim came out in front of the house holding up her slacks and telling the police that her assailant had grabbed her around the neck, choked her and dragged her into the yard. The police succeeded in capturing the culprit only after they had pursued him through several adjacent premises and fired six shots at him. He was then identified by the victim as her assailant. A red purse belonging to her containing 89 cents was removed from the man's pocket by a deputy sheriff at the Maywood Hospital.

While the testimony of the prosecutrix is somewhat hazy as to whether she had any money at the time of the assault, it was definitely established by her that appellant took her purse from the ground and pushed her back as she protested. Although she did say then to the miscreant that she had no money, the discovery of her red purse in appellant's possession was stronger evidence of his robbery than her recollection of the contents of her purse and is substantial proof of a robbery. Her fright at the time, induced by his dragging her into the darkness and his pushing her back at the time of his taking the purse, is sufficient to make it robbery without proof of further force. (*Rice* v. *State,* 204 Ala. 104 [85 So. 437].) ■ Either force or intimidation

is the gist of the crime. (*People* v. *Goldberg*, 302 Ill. 559 [135 N.E. 84] ; *Reese* v. *State*, 91 Tex. Crim. App. 457 [239 S.W. 619] ; *Henderson* v. *State*, 172 Ala. 415 [55 So. 816].)

 Appellant's guilt of an assault with intent to rape was shown by clear and direct testimony which the trial court believed. The victim had imbibed six highballs with a jigger of whisky in each during the evening prior to the attempted visit to her brother. According to appellant's testimony the two had met and had several drinks at a night club. He started to take her home in his automobile. But he put her out on 66th Street where she proceeded up Hooper Avenue. He testified that he accompanied her and that by agreement they engaged in the intercourse. The court was not required to believe appellant's story as to the prosecutrix's consent merely because he so testified. Such specious defense is easy of utterance but the truth of it is to be determined by the trier of fact. It was a rational interpretation of the entire evidence that appellant, knowing the beclouded state of the woman's mind, stopped at some distance from her home, permitted her to disembark, removed his shoes in order to make his approach by stealth and thus seize and remove his victim to a sequestered spot.

Despite the implied finding of mere assault with intent to rape, appellant insists that a reversal should follow because he testified that two acts of intercourse were consummated with the prosecutrix consenting. The court's finding, supported by the woman's testimony, disposes of his argument as to her not resisting. Notwithstanding the facts that she was too frightened and too choked to scream, she did successfully avoid the more serious crime. Proof of her vehement exertion was not necessary to show her resistance. When attacked by a rapist it is primarily for the woman to decide to what extent she can with safety resist. (*People* v. *Lay*, 66 Cal.App.2d 889, 892, 893 [153 P.2d 379].) Where a trier of the facts decides that a prosecutrix's resistance was overcome by force or that she desisted in her struggle with the rapist by reason of her fear induced by his application of force, the finding necessarily follows that she did not consent to the intercourse. (Ibid; Pen. Code, § 261.) But inasmuch as appellant succeeded only to the extent of attacking his victim, the extent of her resistance was important only as negating his testimony that his act was with her consent.

The pleading of the instant victim, "don't choke me," and her heavy breathing corroborate her testimony that she was dragged by the neck to the scene of the crime. In reply to such proof appellant offers nothing but his *ipse dixit* that he had a "date" with the woman. Furthermore, when the officers appeared, appellant by his flight did not behave like a person engaged in a lawful act. To assault a woman for the purpose of violating her sexuality is a heinous crime, for the consequences of which any culprit, however ignorant, dreads apprehension.

*People* v. *Bales*, 74 Cal.App.2d 732 [169 P.2d 262], is not authority for reversing the instant judgment. While that defendant was tried for forcible rape no force was used upon the complainant, no objection made to his act, no call for help, no fight. She was not threatened by the accused nor did she apprehend immediate bodily harm with accompanying apparent power to achieve his purpose. But in that case the court declared that the former rule that there must be resistance to the utmost prevails no longer.

The final contention is that the court erred in permitting appellant to be asked on cross-examination the following:

"Q. As a matter of fact, you intended to perform some burglaries that night in that neighborhood where you saw that woman? A. No. Q. Isn't that why you had your shoes off? A. No. Q. And isn't that why you changed your clothes? A. No. Q. And left your clothes in your car? A. No. Q. Isn't it a fact, that at the time you were arrested you had on your person the following articles: a four inch screw driver? A. Yes. Q. One skeleton key?

MR. BROADY: Just a minute; I will object to that as incompetent, irrelevant and immaterial, and not tending to prove any attempted rape, or robbery either, having possession of a screw driver and a key.

MR. JOHNSTONE: Except that he has told stories to account for his presence out there.

MR. BROADY: I did not object to that.

THE COURT: The objection is overruled.

MR. JOHNSTONE: Also a six-inch length of baling wire, didn't you? A. Yes. Q. And a pair of black leather gloves? A. Yes. Q. And a hairpin? A. I don't know anything about that. Q. And a red leather purse? A. Yes. Q. And the only money you had on your person was the money in the

purse? A. No, I had some money in my pocket. Q. On your person at the time you were searched? A. Yes.''

Appellant now argues that such questions violate the rule which forbids evidence of other offenses and were an attempt to implant a suspicion that appellant was about to commit burglaries. There are two answers to such contention. (1) At no point in the course of such interrogation did appellant specify the basis of his objection. Not a word was said about the questions' calling for evidence of other crimes or about their implanting in the mind of the judge any kind of suspicion. The only protest interposed was the general objection following the inquiry as to his possession of a skeleton key at the time of his arrest. To constitute as prejudicial the admission of evidence it must be shown that the court's attention was directed to the specific vice of the inquiry as it appertained to the pending issues, so that a fair and intelligent ruling could be made. An objection to evidence will not be considered by the reviewing court unless the precise ground for its exclusion was clearly specified to the trial court. █ Also, an appellant may not abandon the objections he made in the trial court and demand a reversal upon grounds named for the first time in the appellate court. (*People* v. *Sellas,* 114 Cal.App. 367, 377 [300 P. 150] ; *People* v. *Owens,* 123 Cal. 482 [56 P. 251]; *People* v. *Wignall,* 125 Cal.App. 465, 467, 474 [13 P.2d 995] ; *People* v. *Leavitt,* 127 Cal.App. 394, 396 [15 P.2d 894] ; *People* v. *Larrios,* 220 Cal. 236, 247 [30 P.2d 404].) It follows that appellant's neglect to point out the basis of the incompetency or irrelevancy of the prosecutor's questions defeats his claim of prejudicial error in admitting the testimony. █ (2) Appellant had testified that he was innocent of a criminal attack and had engaged in intercourse with the prosecutrix pursuant to agreement. After he had attempted to prove that his purposes were innocent it was not error to allow an impeachment of his testimony. It was, therefore, not prejudicial to admit his testimony of his possession of familiar tools of the burglar and of stolen articles or to receive evidence that he was unshod at the time of his attack.

The judgment is affirmed.

McComb, J., and Wilson, J., concurred.