[Crim. No. 1164.   Third Appellate District.—September 28, 1931.]

THE PEOPLE, Respondent, v. EMORY CLINE, Appellant.

C. C. McDonald for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendants were convicted of the crime of rape committed upon the person of one Sumiyo Matsumura, a Japanese woman.   The defendant Emory Cline moved for a new trial; his motion for a new trial being denied, the cause was appealed to this court.

Upon this appeal the only contention made is that the testimony is insufficient to show the commission of the crime of rape, and that the Japanese did not resist the attacks of the respective defendants to the extent required by section 261 of the Penal Code.   No contention is made that the evidence is insufficient to justify the jury in finding that both of the defendants had sexual intercourse with the complaining witness.

The record shows that the two defendants spent the night of January 29 and 30, 1931, at a cabin on a farm not far distant from where the prosecuting witness and her husband were living in Yolo County.   The record shows that about the hour of 9 o'clock on the evening of the 29th, the de-

fendants at that cabin began drinking wine, and continued there drinking wine until about 5 o'clock of the following morning, when their supply of wine became exhausted, and one of ·the defendants suggested that they go over to the home of Mr. and Mrs. Matsumura and obtain an additional supply. Thereupon the two defendants went over to the Matsumura home, and one of them knocked on the door, in response to which Mr. Matsumura got up, made a light, and came to the door. The defendants asked Mr. Matsumura for· a supply of wine; Mr. Matsumura replied that the defendants were drunk and told them to go away. Thereupon the defendant Power struck Matsumura upon the head, dealing him a very heavy blow. The blow was of sufficient force to render Mr. Matsumura unconscious for a considerable period of time. The testimony of the physician, who examined Mr. Matsumura, is to the effect that Matsumura was badly beaten. Following this, Mr. Power entered the kitchen of the house occupied by the Matsumuras and immediately assaulted the prosecuting witness. At the time of this assault it appears that the defendant Cline came to the kitchen door and saw what was taking place, and made no effort to cause Powers to desist; that after Powers had succeeded in accomplishing his purpose and Mrs. Matsumura had succeeded in releasing herself from his embraces, she started toward the door of the kitchen to go to the side of her husband. As she opened the door of the kitchen, she was grabbed by the defendant Cline, thrown down by him and the offense charged in the indictment inflicted upon her person.

A *résumé* of the testimony of Mrs. Matsumura we think sufficiently answers the appellant's contention as to the question of resistance to be sufficient to render the defendants amenable to the provisions of section 261 of the Penal Code.

After testifying that she lived with her husband at the place referred to and that she saw the defendants about 5 o'clock on the morning of the 30th of January, 1931, the witness testified as follows:

"We were in bed when we heard a knock at the door. I told my husband to answer the knock, he got up; at the knocking at the door he went to the kitchen, got dressed and then went to the door; I got up and lit the light; I

was standing by the kitchen stove when my husband opened the door and stepped out; I did not see him after he stepped out; I heard a remark which expressed surprise and also a sound of beating; I heard a voice like Mr. Cline's say 'that's all right, that's all right'; I had known Mr. Cline for about four years; he worked at our house and also at the home of the father of my husband; after I heard the sound of exclamation and the sound of blows outside I started to go out; I went to the door, the door was closed, I opened the door. As soon as I opened the door, the man with a mustache opened the screen door and came right in; that man is the defendant Powers; he said something but I did not understand what he said; he grabbed me and tried to put his face near my face and I struggled away from him; then he grabbed me up and walked right into the room and threw me down on the floor; after he threw me down, he went on top of me; I tried to struggle and free myself and then he slapped me in the face and then Mr. Cline came into the room. Cline said something to the man. As soon as he saw my face he walked out; after Powers slapped me, he accomplished what he was after; he held me down all the time; he succeeded in the act of penetration; I struggled to get away and he hit me; I finally got away from him. As soon as I got away from him I went out to save my husband; he was outside lying down at the entrance of the door. As soon as I opened the screen door and tried to get out another person grabbed me by the hands and dragged me. I think it was Cline; then I was knocked down and assaulted again but I do not remember very much of the details. I was all excited, so I don't remember how I was thrown down. Cline got on top of me; I screamed; I struggled to the best of my ability until I was hit and was unable to struggle any further.''

There is some testimony to the effect that after the defendant Cline had succeeded in the act of penetration no further resistance was offered.

The defendants, of course, deny the charges preferred against them, but admitted being present at the Matsumura house at the time in question and made no denial of the fact of knocking Mr. Matsumura into an unconscious condition.

Upon this state of facts, we think the offense charged in the indictment clearly established and sufficiently supported by the following authorities: ''Although there is authority that there must be the utmost reluctance and the utmost resistance, the rule of 'resistance to the uttermost' has been expressly repudiated; and even where the term 'utmost resistance' is still employed, it is held to be a relative term, which actually means the greatest effort of which the woman is capable to foil the assailant and preserve the sanctity of her person. Too, it has been stated that the requirement that the act be without the female's consent or against her will signifies that it be committed against the utmost reluctance and against the utmost resistance which she is capable of making, and that the female's opposition of the man to the utmost limit of her power is the test of resistance. Thus the prevailing rule is that there must be the most vehement exercise of every physical means or faculty within the female's power to resist penetration, and a persistence in such resistance until the offense is consummated. The female need not resist as long as either strength endures or consciousness continues. Rather the resistance must be proportioned to the outrage; and the amount of resistance required necessarily depends upon the circumstances, such as the relative strength of the parties, the age and condition of the female, the uselessness of resistance, and the degree of force manifested, which rule is in some jurisdictions expressly adopted by statute. Stated in another way, the resistance of the female to support a charge of rape need only be such as to make nonconsent and actual resistance reasonably manifest. The female need resist only until physical penetration occurs, when the crime is complete, and her failure to resist after that is immaterial; and she need only resist until resistance becomes so useless as to warrant its cessation.'' (52 C. J. 1019.)

In the case of *Bulls* v. *State*, 33 Okl. Cr. 64 [241 Pac. 605], we find the following: ''The old rule of 'resistance to the uttermost' is obsolete, and is repudiated by the more modern authorities. The law does not require that the woman shall do more than her age, strength, the surrounding facts, and all attending circumstances make it reasonable for her to do in order to manifest her opposition. In reference to the degree of resistance required, the jury should be instructed

that it is necessary, not that the prosecutrix should have made the uttermost resistance, but that she made such resistance as she was capable of making at the time.''

In *People* v. *Norrington,* 55 Cal. App. 103 [202 Pac. 932, 935], the Court of Appeal for the Second District, in this case speaking through Justice Finlayson, quoted the following from the Supreme Court of Idaho, which we think pertinent to this case, and when fully considered in connection with the facts set forth, shows that the jury was fully warranted in finding both of the defendants guilty. It must be borne in mind all the while that the defendants were acting in concert in their criminal endeavors. The quotation is as follows:

''A number of authorities are cited by counsel for appellant, to the effect that the state must show in such cases that the female 'showed the utmost reluctance and used the utmost resistance'. (*Devoy* v. *State,* 122 Wis. 149 [99 N. W. 455].) To our minds the trouble with a number of these authorities is that they reverse the order of the inquiry. They go about inquiring into the kind, character, and nature of the fight put up by the woman, rather than the nature of the assault and evident and manifest purpose and intent of the assailant. For the purpose of reaching the conclusions announced in some of these cases, it is necessary to assume that, in the first place, a man has a right to approach a woman, lay hold on her person, take indecent liberties with her, and that, unless she 'kicks, bites, scratches and screams' (*People* v. *Morrison,* 1 Park. Cr. R. [N. Y.] 625) to the 'utmost of her power and ability', she will be deemed to have consented, and indeed to have invited the familiarity. Such is neither justice, law, nor sound reason. On the contrary, under the statute, a case might arise where a conviction could properly be had for assault with intent to commit rape, and still no personal encounter or contact have ever taken place. In fact, many such cases are reported. (23 Am. & Eng. Ency. 866, and notes; 1 McLain Cr. Law, sec. 463; 10 Ency. of Ev. 607, and cases cited.) . . . It is true that she (the prosecutrix) must not have consented, because, if she did, there would be no offense; but, on the other hand, men should not be allowed, under the protection of law, to construe every indiscreet act or word of a woman into consent to carnal knowledge, nor

should they be allowed to indulge in presumptions against the virtue and chastity of women. Rather let the evil-minded man incur the risk and hazard of misjudging the opposite sex, and [*sic*] endeavoring to degrade them and destroy their peace and happiness. A little of this kind of law would go a long way with some of the brutes who unfortunately bear the names of men. There would be far less illicit intercourse, if there were no assaults by the seducer in the first place; and the oftener he is brought to justice the less annoyance the community will suffer from the graver offenses toward which his conduct leads."

No contention is made that the jury was not properly instructed and a reading of the testimony convinces us that the jury could not reasonably have brought in any other verdict.

The judgment and the order of the trial court are affirmed.

Thompson (R. L.), J., and Preston, P. J., concurred.