[Crim. No. 1460. Third Appellate District.—December 6, 1935.]

THE PEOPLE, Respondent, v. ALEXANDER COOK, Appellant.

J. A. Ratchford for Appellant.

U. S. Webb, Attorney-General, and Neal Chalmers, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was found guilty of an offense based upon subdivisions 1, 3 and 4 of section 261 of the Penal Code. From the judgment of the court following the conviction and the order denying a new trial, the defendant appeals, assigning as causes therefor, two grounds:

1st. That the evidence is insufficient to support the verdict of the jury;

2d. That the trial court committed error in refusing to properly instruct the jury after retirement.

That the evidence introduced at the trial is sufficient to support the verdict is beyond question, if believed by the jury. The prosecuting witness testified as follows: "He passed the store; I asked him if he was going to stop for

the nickels; he said he would get them. He went up the road and stopped and asked for a kiss, and I said, 'No,' and he said, 'We will take a ride'; and he continued on and he went over a dirt road; he got stuck there and I begged him to go home, and he said, 'No'; he said, 'No,' and he pulled me over towards him and told me what he was going to do. I cried; I said, 'I can't do it.' He said if I didn't do it he would take me over to Sulphur Banks and drown me, and he said he could bury me alive in the sand and nobody would ever find me. I begged him not to, not to do anything to me, to let me go; and he said, 'I'll let you go but you will have to walk home.' And I said, 'I will walk home or do anything.' And I went and ran up the hill. He yelled for me to come back, and he said, 'If you don't come back I will kill you.' He ran after me and caught me; he twisted my arm back of me, and I said, 'Please let me go'; and he said, 'I will break it.' He said, 'I taught jujistics four years in the Fire Department; I can break your arm. Do you want to see me do it?' I said, 'No, please don't do it.' And he pulled me down the hill and put me in the machine; and I cried. He said, 'Please don't cry,' and he put his hand on my mouth, and said, 'Keep still or I will kill you.' He took a bottle from the back of the machine and said, 'I will hit you over the head if you don't keep still.' I begged and begged to please let me go. He said, 'Keep still or I will knock you out.' He said, 'I have a monkey wrench in the back of the car; I will smash your brains out with that'; and he shoved me down and started making the attack. I begged him to stop, it hurt so, and he wouldn't stop; and I begged him to let me go, to try and get me home, and he said, 'All right.' Then he tried to get the car started; he couldn't get it started; he told me to go out and put rocks under the wheels, but 'don't try to get away'; and I put some rocks under the wheels. He told me to get in and drive it. I didn't know how to drive; he told me how to put my feet on, and I tried to start it, but it wouldn't start; and then he got me in the machine again and tried to attack me; he said the first time wasn't good enough. I said, 'Please don't do it; it hurts terribly and pains'; and he said, 'That is because you didn't do enough the first time'; and he got out of the machine and tried to break a limb off a tree, and he picked up a rock and said,

'I will throw this in your face if you don't.' And then he got on top of me and did it again, and then I said, 'Let me go home; please let me go home'; and he said, 'You are not going to get out of here until I get the machine started'."

The defendant, upon the witness stand, failed to contradict any of the statements of the prosecuting witness, but according to the testimony of the sheriff, told a rather fanciful story of the occurrence. We here set forth the testimony of the sheriff, to wit:

"Taylor A. Day, the sheriff of Lake county, testified that after he arrested the defendant, the defendant told him that when he and the prosecuting witness started out from Clearlake Park in the automobile, they were accompanied by another man, whose name was unknown to defendant, but that he wore a white shirt; that after they had traveled some little distance, he, the defendant, got out of the car, whereupon the man with a white shirt and the prosecutrix drove away; that defendant followed them, and that he finally came upon the car stopped near the road, and that as he approached the car he could see that the prosecutrix and the man with the white shirt were engaged in an act of sexual intercourse; that he, the defendant, scared this man, and that he jumped up and 'ran away and has never been seen since."

Som additional corroborative circumstances appear in the testimony, but we think the foregoing sufficient to justify the verdict of the jury.

Upon this appeal it is urged that the action of the prosecuting witness was not sufficient to comply with the law relative to the necessity of resistance on the part of a female under such circumstances.

In the case of *People* v. *Cline*, 117 Cal. App. 181 [3 Pac. (2d) 575], this court had occasion to review the authorities on the subject of resistance. We can do no better than to refer to that case and the authorities there cited, which show that the circumstances involved in this case comply with the law relating to resistance as now understood and declared in this state. In the Cline case we quoted from 52 C. J., page 1019, the following language which is pertinent here: "The female need not resist as long as either strength endures or consciousness continues. Rather the resistance must be proportioned to the outrage; and the amount of

resistance required necessarily depends upon the circumstances, such as the relative strength of the parties, the age and condition of the female, the uselessness of resistance, and the degree of force manifested, which rule is in some jurisdictions expressly adopted by statute. Stated in another way, the resistance of the female to support a charge of rape need only be such as to make nonconsent and actual resistance reasonably manifest. The female need resist only until physical penetration occurs, when the crime is complete, and her failure to resist after that is immaterial; and she need only resist until resistance becomes so useless as to warrant its cessation.'' Other cases cited in that opinion support the rule set forth in the foregoing quotation, as shown by the following excerpts, to wit:

"In the case of *Bulls* v. *State*, 33 Okl. Cr. 64 [241 Pac. 605], we find the following: 'The old rule of ''resistance to the utmost'' is obsolete, and is repudiated by the more modern authorities. The law does not require that the woman shall do more than her age, strength, the surrounding facts, and all attending circumstances make it reasonable for her to do in order to manifest her opposition. In reference to the degree of resistance required, the jury should be instructed that it is necessary, not that the prosecutrix should have made the utmost resistance as she was capable of making at the time.' In *People* v. *Norrington,* 55 Cal. App. 103 [202 Pac. 932, 935], the Court of Appeal for the Second District, in this case speaking through Justice Finlayson, quoted the following from the supreme court of Idaho, which we think pertinent to this case, and when fully considered in connection with the facts set forth, shows that the jury was fully warranted in finding both of the defendants guilty. It must be borne in mind all the while that the defendants were acting in concert in their criminal endeavors. The quotation is as follows: 'A number of authorities are cited by counsel for appellant, to the effect that the state must show in such cases that the female ''showed the utmost reluctance and used the utmost resistance''. (*Devoy* v. *State,* 122 Wis. 148, 149 [99 N. W. 455].) To our minds the trouble with a number of these authorities is that they reverse the order of the inquiry. They go about inquiring into the kind, character, and nature of the fight put up by the woman, rather than the nature of the assault

and evidence and manifest purpose and intent of the assailant. For the purpose of reaching the conclusions announced in some of these cases, it is necessary to assume that, in the first place, a man has a right to approach a woman, lay hold on her person, take indecent liberties with her, and that, unless she "kicks, bites, scratches and screams" (*People* v. *Morrison*, 1 Park Cr. R. [N. Y.] 625) to the "utmost of her power and ability", she will be deemed to have consented, and indeed, to have invited the familiarity. Such is neither justice, law, nor sound reason.' "

■ The objection that the court erred in its instructions to the jury scarcely warrants consideration. It appears that after the jury had retired, they returned into court and asked the court if the pleadings were to be considered as part of the evidence. This request was not answered by the court, but the court did read to the jury certain instructions which the jury indicated they desired to have read. Absolutely no error is shown on the part of the court relating to this assignment. A review of the instructions given by the court show that they were carefully and fully instructed as to the law involved in this proceeding.

Finding no merit in the appeal, the order and judgment are affirmed.

Thompson, J., and Pullen, P. J., concurred.