[Crim. No. 3810. Second Dist., Div. Three. Nov. 21, 1944.]

THE PEOPLE, Respondent, v. ELMER LAY, Appellant.

James J. McCarthy for Appellant.

Robert W. Kenny, Attorney General, Frank Richards, Deputy Attorney General, Fred N. Howser, District Attorney, and Robert Wheeler, Deputy District Attorney, for Respondent.

SHINN, Acting P. J.—Elmer Lay was convicted after a court trial of the crime of forcible rape. Upon his appeal he attacks the sufficiency of the evidence to support the finding of guilt.

Defendant Lay, a tailor and presser by trade, is 30 years of age, married and living with his wife. He was driven to a café in Culver City by a neighbor, one Bullerdick, at about 8:00 p. m., and spent some two hours there drinking beer. Bullerdick left the café in the meantime and did not return. The prosecutrix, 27 years of age, weighing 110 pounds, and married to a soldier who was overseas, entered the café at about 10 o'clock and had dinner. It was her intention to go window shopping until time to take a bus at 11:40 p. m. for the Hughes Aircraft plant where she was employed on the midnight shift as a key punch operator, punching time cards. Defendant engaged her in conversation in the café, offered to buy her a drink, which she refused, and left the café with her. He walked beside her for half a block and invited her to take a ride, which she declined. As they crossed an intersecting street defendant took hold of her arm, which alarmed her. She testified that as they proceeded defendant took hold of both of her arms and held them behind her. She saw a woman and two men leaving the café and called to them for help as defendant was shoving her along, but they paid no

attention to her. Defendant was headed for the Bullerdick car which was parked at the curb with Bullerdick waiting in it. Prosecutrix testified that the front door of the car was open and that defendant lifted her from the ground and shoved her into the front seat which he entered after her. She saw a soldier and called to him: "Hey, soldier come here and help me. This fellow is bothering me." The soldier walked on. Bullerdick then drove around for 20 or 25 minutes. Defendant urged him to drive to some dark spot, which he did, and stopped the car, but changed his mind and drove on and back to the starting point. They then drove to a point on Main Street in Culver City and at about 11:30 p. m. parked in a well lighted block in the main part of town, three or four blocks from the police station. At defendant's request Bullerdick left the car to take a walk. He placed a cloth over the license plate of the car before departing. Questioned as to his purpose in this he answered, "I just accidentally dropped that thing over there; if there was going to be any trouble I would not be accused of any trouble of any kind." An act of intercourse was attempted by defendant in the front seat of the car, he then climbed over into the rear seat, prosecutrix either climbed or was pulled into the rear seat and an act of intercourse was in progress when it was interrupted by the appearance of a police officer. As to the foregoing facts there was no material conflict in the evidence. The conflicts in the testimony are the following: defendant testified that prosecutrix accepted his invitation to take a ride, willingly entered the car, accepted his embraces and kisses, consented to the act of intercourse, helped him remove her clothing and climbed into the rear seat at his suggestion. He testified that she was friendly and agreeable at all times. However, he freely admitted that she called for help, as she testified, that he asked "What in the hell are you hollering like that for?" and that she replied "I don't know." And the officer testified that as they stood by the car defendant said "one minute she is willing and the next minute she screams." He denied using any force upon prosecutrix or threatening her at any time. Prosecutrix testified that while they were driving around she took hold of Bullerdick's arm and asked him to let her out of the car; that defendant held her head with his hand over her eyes and ran his hands all over her person, that she resisted him and was frightened.

She testified that defendant struck her in the face a couple of times and told her to keep quiet; that when Bullerdick left the car she screamed and defendant choked her; that he forced her down on the front seat and tried to remove her slacks; that she pushed him away; that he was alternately pulling at her clothing and choking her; that he choked her every time she screamed until she had just about given up screaming; that defendant pulled off her slacks and panties; that he pulled her into the rear seat and that she was badly frightened and felt confused and helpless.

The officer who appeared first on the scene had come to the station by motorcycle after a young boy had appeared at the scene and directed attention to the automobile. The officer first stopped some distance from the car, shut off his motor and listened. He then went on and parked close to the car where he encountered Bullerdick, who had returned from his stroll to the vicinity of the car. After a brief conversation, and hearing no noise from the car, the officer approached it and threw his flashlight upon the occupants of the rear seat. Prosecutrix called out for help, defendant emerged from the car, prosecutrix replaced her clothing and all parties were taken to the police station. In reply to an inquiry by the officer as to whether "it" was against her will prosecutrix stated that it certainly was. At the station, according to the testimony of several officers, prosecutrix was found to have three livid marks upon one side of her throat and one upon the other side. Her slacks, which were introduced in evidence, were torn on one side. She required no medical attention. Bullerdick was jointly charged and convicted of rape. For his participation in the affair, as related, he received 30 days in jail and probation and did not appeal. His testimony while generally favorable to defendant did not relate to the occurrences in the car while it was parked.

■ Defendant's argument that the evidence failed to prove that prosecutrix resisted as vigorously as the law requires proceeds from the false premise that "there must be the most vehement exertion of every physical means or faculty within the female's power to resist penetration, and a persistence in such resistance until the offense is consummated." The statement is but part of a paragraph in Corpus Juris quoted in full in *People* v. *Cline* (1931), 117 Cal.App. 181 [3 P.2d 575]. It is not the language of the court or the law

in this state. (*People* v. *Norrington* (1921), 55 Cal.App. 103 [202 P. 932].) The question here is whether the court could reasonably have concluded from the evidence either that the prosecutrix resisted and her resistance was overcome by force or that she was prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution. (Pen. Code, § 261.)

██ If the court had believed that prosecutrix finally desisted in her calls for help and her struggle with defendant and submitted to the act, this alone would not have proved consent. Submission induced by the fear specified in the code is not consent. It is primarily for the woman who is attacked to decide to what extent, if at all, she can safely resist. Under such circumstances as the record here shows the law allows a woman a free choice of what she may consider the lesser of two evils and the prosecutrix had a right to choose between rape and possible strangulation.

██ The trial court decided, as a question of fact, that the resistance offered by prosecutrix was in good faith and legally sufficient. If her testimony was believed no other conclusion would have been justified. That she was helpless in the hands of defendant is evident from the fact that she was a small, frail woman. The fact that there were livid marks upon her throat strongly corroborated her testimony that she had been choked. Defendant has offered no explanation of the marks and his counsel offers none, merely commenting "how they got there, or when, I am not able to say." The trial court would have been justified in believing that prosecutrix was threatened with great and immediate bodily harm accompanied by apparent power of execution, if in doubt whether her resistance had been overcome by actual force.

The judgment and order denying defendant's motion for new trial are affirmed.

Wood (Parker), J., and Fox, J. pro tem., concurred.