[Crim. No. 5065. In Bank. June 2, 1950.]

THE PEOPLE, Respondent, v. HENRY B. GULDBRANDSEN, Appellant.

Toland C. McGettigan for Appellant.

Fred N. Howser, Attorney General, Doris H. Maier, Deputy Attorney General, and Charles J. McGoldrick, District Attorney, for Respondent.

GIBSON, C. J.—Defendant was charged by information with the murder of Peter Flint and Peter Jensen, with the rape of Eva Paget, and with assault with intent to murder her. He pleaded not guilty and not guilty by reason of insanity to each of the counts but later withdrew the insanity pleas. A jury found defendant guilty of murder in the first degree on both counts without recommendation as to punishment and also found him guilty of assault and rape as charged. Motions for a new trial, for arrest of judgment, and for reduction of the verdicts on the murder counts to second degree murder, were denied. Defendant was sentenced to death on the murder counts and to imprisonment for the period prescribed by law for rape and for felonious assault. The sentence of death having been imposed, this appeal comes before us automatically. (Pen. Code. § 1239, subd. (b).)

The record shows without contradiction that defendant killed Flint and Jensen, but it is argued that the evidence does not support the verdict of murder of the first degree. Defendant also claims that the evidence is not sufficient to show the commission of rape. No contention is made as to the sufficiency of the evidence to support the assault conviction.

There were no eyewitnesses to the killings nor to the alleged assault and rape of Eva Paget. Defendant did not testify in his own behalf, and Mrs. Paget, because of her physical condition, was unable to be present at the trial or to give testimony. The People's case consists in part of admissions made by the defendant. On the day after the crimes were committed he told a newspaperman in Eureka that he was "the man they were looking for" in Sonoma County in connection with the killings of Flint and Jensen and the rape of Eva Paget. He related what had occurred and later signed a statement prepared by the news reporter. Shortly thereafter he was questioned by the District Attorney of Humboldt County in the presence of a stenographer. The statement signed by defendant and the transcription of the interrogation by the district attorney were received in evidence without objection.

According to defendant's statements he left Alameda on Friday, July 1, 1949, and drove to Sonoma County with Peter Flint to spend the weekend at the cabin of Peter Jensen, a friend of Flint. On the way they stopped at Londonside and visited with Eva Paget who was living in a summer cottage with her two children and a young girl who acted as a "baby sitter." Flint introduced defendant to Mrs. Paget, and the three of them visited a nearby tavern where they had some beer, played a little shuffleboard, and were generally friendly. Defendant and Flint spent the night at Jensen's cabin.

Jensen, who worked at the Sonoma State Home, arrived at his cabin sometime Saturday, July 2. Flint had an engagement with Mrs. Paget that evening, and Jensen and defendant went together to a bar and later to Jensen's apartment at the Sonoma Home. Flint picked up defendant at the apartment, and they went to the cabin to sleep. The following day Flint and defendant went swimming and visited Flint's sister-in-law, whose home was near Sonoma. That evening Flint again had an engagement with Mrs. Paget, and he left defendant at a bar not far from her house. Flint and Mrs. Paget joined defendant later that evening, and the three of them

went to another bar where they drank a few bottles of beer, talked and played shuffleboard. Mrs. Paget left the bar about 1 o'clock in the morning with other friends. Flint and defendant stayed on until closing time, drinking beer and talking quietly, and returned to the cabin about 2 :30 a. m. Jensen was there and had already retired. Flint and defendant slept together in another bed in the same room.

Defendant said he awoke the following morning, Monday, July 4, trembling and with his heart beating fast. He got out of the bed, went outside, picked up an Indian pestle made of stone which he remembered having seen, went back into the cabin and struck Flint several times about the head with the pestle. Defendant then went to the other bed where Jensen was asleep and struck him on the head with the pestle several times. He pulled the bedclothes over the head of each of the men and then washed himself and dressed. Taking Flint's car, he drove down to Mrs. Paget's place and told her that Flint had broken an arm and wanted to see her. Defendant waited at her house while she dressed and then drove her to Jensen's cabin. As they were going up the steps leading to the cabin door he struck her about the head with "the bludgeon," and she fell to the ground, bleeding. She said something about her children and asked for some water. Defendant went to get water for her, and while he was gone she tried to escape by running back to the car and attempting to drive away. Defendant overtook her, however, and made her get out of the car and start back for the house. He held her arm and led her to the kitchen, where he gave her some towels. He told her that Flint and Jensen were visiting at a nearby cottage, and she did not go into the main room where their bodies were. She washed herself and asked to be taken back to her house, promising that she would not tell what had happened. Defendant refused, saying that she would have to stay there until after he left.

According to defendant, Mrs. Paget then offered herself to him voluntarily as an inducement to him to take her home, and they removed their clothes and had sexual intercourse on a barbecue table in the yard behind the cabin. Afterward defendant gave her his shirt to wear and tied her to a tree in the backyard with a belt and rags. He then went inside the cabin, washed, changed to clean clothes belonging to Flint, took Flint's wallet and keys, and drove away in Flint's car at about 11 a. m. Defendant drove as far as Eureka where he registered at a hotel under an assumed name, went to a

movie and stayed in some bars until 2 a. m. The following day, as we have already seen, he contacted the newspaper reporter, told his story, and was turned over to the district attorney's office.

A bloodstained pestle corresponding to that described by defendant was found by officers near the cabin. An autopsy was performed on the bodies of Flint and Jensen, and the doctor testified that both men had been struck about the head and shoulders numerous times with a heavy, blunt instrument like the pestle, that their skulls were splintered, and that both men died from shock and hemorrhage following laceration of the scalp and fracture of the skull and contusions of the brain. Chips and slivers of bone had been driven into the brain of each man by the force of the blows.

A witness testified that at about 2 o'clock the afternoon of July 4 she and another woman stopped their car near Jensen's mailbox to eat a picnic lunch and that while they were there Mrs. Paget approached them. She was bloody, bruised and scantily dressed in a man's shirt, and complained of a recent assault on her person. The two women put her in their car and drove until they found a highway patrol officer who took her to a hospital. At the time of the trial she was still in no condition to testify, although under subpoena. Strands of her hair were found adhered to blood on the stone pestle and her clothes were found covered with blood near the barbecue table where defendant said the act of intercourse had taken place. There was other evidence of the occurrence of intercourse, the details of which need not be repeated here.

In our opinion, the evidence is sufficient to support the convictions of murder of the first degree. Malice will be implied when no considerable provocation appears or when the circumstances attending the killing show an abandoned and malignant heart. (Pen. Code, § 188.) According to his own statement defendant killed Flint and Jensen for no reason, and there is nothing in the evidence to suggest any provocation for the murders. The manner of killing in the present case is sufficient evidence from which malice can be implied.

Direct evidence of a deliberate and premeditated purpose to kill is not required. Deliberation and premeditation may be inferred from proof of such facts and circumstances as will furnish a reasonable foundation for such an inference, and, where the evidence is not in law insufficient, the matter

is exclusively within the province of the jury for determination. (See *People* v. *Isby,* 30 Cal.2d 879, 888 [186 P.2d 405].) ██ In the present case, defendant's actions in going outside the cabin to pick up the pestle which he remembered having seen and in bringing it back inside the cabin, the absence of any immediate provocation for the attack, the fact that the victims were unarmed and apparently asleep, the numerous vicious blows, and the identical pattern of the killings, all furnish evidence to support the jury's inference that defendant was possessed of a willful, deliberate and premeditated purpose to kill both Flint and Jensen. (See *People* v. *Isby,* 30 Cal.2d 879, 888 [186 P.2d 405]; *People* v. *Cook,* 15 Cal.2d 507, 514-517 [102 P.2d 752].) Moreover, the jury could have believed that defendant's motive for the killings was to get Jensen and Flint out of the way so he could force himself upon Mrs. Paget.

██ There is ample evidence to support the conviction of rape. The jury was, of course, entitled to disbelieve defendant's statement that Mrs. Paget had offered herself to him voluntarily. He admitted that he struck her shortly before having intercourse with her, and that fact is corroborated by evidence that strands of her hair were found adhered to blood on the pestle. Her efforts to escape from defendant immediately prior to the act of intercourse, the fact that she was subsequently tied to a tree, her appearance when seen by the two women, and her physical condition when examined at the hospital, constituted further evidence from which the jury could have inferred, as it apparently did, that she had not voluntarily consented to intercourse. ██ Even had she submitted in an attempt to save her life or to escape further beating, submission induced by such fear does not constitute consent. (See *People* v. *Lay,* 66 Cal.App.2d 889, 893 [153 P.2d 379].)

██ Defendant contends that the trial court erred in admitting evidence of the fact that Mrs. Paget complained of an assault on her person to the two women. He argues that such evidence is admissible only as corroboration of testimony by the prosecutrix and is inadmissible where, as here, the prosecutrix is an adult and competent to testify but has not taken the stand. He also complains of an instruction to the effect that evidence of the prompt complaint might be considered by the jury in corroboration of other evidence given in the case. There is some suggestion in the cases that evidence that a complaint was made is inadmissible where the prosecutrix

does not take the stand, unless she is a child too young to testify. (See *People* v. *Figueroa,* 134 Cal. 159, 162 [66 P. 202] ; *People* v. *O'Bryan,* 132 Cal.App. 496, 503 [23 P.2d 94] ; note, 157 A.L.R. 1359; *cf., People* v. *Adams,* 14 Cal.2d 154, 158-159 [93 P.2d 146].) It is unnecessary for us to determine whether this is a sound rule or whether an exception should be made in cases such as this where an adult witness is unable to testify, since it is clear that neither the admission of the evidence nor the giving of the instruction complained of resulted in a miscarriage of justice.

▮ Defendant contends that the trial court erred in giving the following instruction: ''Section 1105 of the Penal Code . . . provides as follows: 'Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.' '' This instruction has been disapproved in recent cases where it has been given without an explanation of the meaning of the statute, but the error is not prejudicial in the present case where there is no evidence of excuse or justification, where other clear instructions were given to the effect that the burden of proof was on the prosecution and where the evidence of guilt is clear and convincing. (See *People* v. *Tuthill,* 31 Cal.2d 92, 102 [187 P.2d 16].)

▮ Defendant also complains of an instruction to the effect that, among other specified methods of impeachment, a witness may be impeached by proof that he has been convicted of a felony. The newspaper reporter to whom defendant volunteered the story of the crimes testified that defendant told him he had served a two-year term for assault with a deadly weapon. Defendant does not complain of the admission of the evidence, which was received without objection, but argues that the instruction was erroneous because defendant was not a witness and, therefore, was not subject to impeachment. It is true that the instruction had no application in the present case, but, in view of the record, it would seem clear that no prejudice resulted therefrom.

▮ Photographs of the scene of the crimes and of the bodies of Flint and Jensen were admitted in evidence over defendant's objections. It is argued that the photographs were so gruesome in character that the jury, after seeing them,

could not dispassionately consider the case. There can be no question, however, that they had evidentiary value, and their admission into evidence was within the court's discretion. (See *People* v. *Isby*, 30 Cal.2d 879, 892 [186 P.2d 405] ; *People* v. *Smith*, 15 Cal.2d 640, 649 [104 P.2d 510].)

The judgments of conviction and the orders denying the motions for a new trial, for arrest of judgment and for reduction of the verdicts on the two murder counts are, and each of them is, affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.