[Crim. No. 169.    Third Appellate District.—February 26, 1912.]

THE PEOPLE, Respondent, 'v. ELVI LEWIS, Appellant.

CRIMINAL LAW—STATUTORY RAPE—INTERCOURSE WITH STEP-DAUGHTER—SUPPORT OF VERDICT—UNCORROBORATED EVIDENCE OF PROSECUTRIX—PRESUMPTION—REVIEW UPON APPEAL.—Where the defendant was accused of statutory rape by sexual intercourse with his step-daughter of the age of thirteen years, and was convicted upon her uncorroborated testimony, it is held that it must be assumed upon appeal, in the absence of anything appearing in the record to the contrary, that the jury reached their verdict with a full realization of their sworn duty, free from passion or prejudice, and also that the trial judge, who refused a new trial, was satisfied with the verdict, and that it cannot be said that a condition of the record appears which would warrant this court in interfering with the verdict.

ID.—REQUESTED INSTRUCTIONS PROPERLY REFUSED—DANGER OF CONVICTION UPON UNCORROBORATED EVIDENCE—CAUTION AS TO EVIDENCE LONG AFTER OFFENSE.—The court properly refused requested instructions for the defendant, one of which stated that "in the absence of corroborating testimony, it is dangerous to find a verdict of guilty," and the other of which stated "that the testimony of children should be received with great caution, and this is especially the case when the children are of tender years, and the events they are relating happened a long time previous to the time they are on the stand," where it appears that the offense charged occurred in April, and the trial occurred in the following June, and the court gave proper cautionary and admonitory instructions.

ID.—CONSTRUCTION OF CHARGE OF COURT—LAW OF REASONABLE DOUBT—CONVICTION ON SOLE EVIDENCE OF PROSECUTRIX.—Where the court fully instructed the jury as to the law of reasonable doubt, and that they "must find that each and every fact essential to conviction must be proved beyond all reasonable doubt and to a moral certainty," it is not necessary to repeat that law with every instruction, and it must be held implied in an instruction that "if the jury believe the prosecutrix, they can convict on her evidence alone." It must be presumed that the jury understood from the instructions that they were not required to convict on the evidence of the prosecutrix unless convinced of the truth of her evidence beyond a reasonable doubt.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial. C. W. Norton, Judge.

The facts are stated in the opinion of the court.

Ben Berry, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, Deputy Attorney General, for Respondent.

CHIPMAN, P. J.—Defendant was accused by information, tried by a jury and convicted of the crime of rape committed on April 17, 1911, upon a child under the age of sixteen. He appeals from the judgment of conviction and from the order denying his motion for a new trial. The verdict was, "Guilty of rape as charged. We recommend him to the mercy of the court." He was sentenced to imprisonment for ten years.

The defendant being unable to employ counsel, the court appointed Mr. Ben Berry as his attorney, who conducted the defense at the trial with zeal and ability, and is prosecuting this appeal with apparent belief in the innocence of his client.

The prosecutrix is defendant's step-child and at the time of the alleged offense was of the age of thirteen years. Defendant was then and had long been afflicted with weak and inflamed eyes, nearly blind, and deprived of one leg and was at times under treatment by a physician, although the evidence did not show lack of copulative capacity. He was living in Stockton with his mother, Mrs. Sarah Lewis, and his married sister, Mrs. Turner, and three younger brothers and sisters, before his marriage with the mother of the prosecutrix, Mrs. Emily Hamilton, then a widow. The mother and her child had lived in Lodi, and in the early part of 1909 moved to Stockton and took up their residence with Mrs. Lewis, defendant's mother. Both Mrs. Lewis and Mrs. Hamilton were working women, sometimes going out to families and at other times doing washing at home for patrons. The prosecutrix went to public school with the other children. In September, 1909, defendant married Mrs. Hamilton while living in the family of his mother, Mrs. Sarah Lewis, and not long after moved to a house at a place called "the homestead," in another part of the city of Stockton. This was a house of three rooms, one of which was a kitchen, where there was also a bed. It was at this house and on this kitchen bed that the particular act is alleged to have occurred. Part of the time,

prior to April 17, 1911, a Mrs. Johnson lived with the family at the homestead. The child, Angie, attended public school not far distant. Both Mrs. Lewis, defendant's wife, and Mrs. Johnson, while living with the family, worked out generally, but not always, on alternate days, one remaining at home to do the work. Mrs. Johnson was not living with them in April, 1911. The story told by the child involves the conduct of defendant while living at his mother's house, both before and after his marriage, as also in the house at the homestead. The verdict has no foundation other than the testimony of the prosecutrix, which is not corroborated by any circumstance or fact, except it be the result of the examination made by witness, Dr. Miller, and by him only to the extent of appearances, not necessary to mention, known by physicians to indicate sexual intercourse with someone. This fact, as corroborating evidence pointing to defendant, lost its force by admitted conduct of the prosecutrix with other persons. Counsel urge with earnestness that the verdict, based upon the uncorroborated testimony of his accuser and upon a narrative of facts in itself unbelievable, was the result of passion and prejudice and was without substantial justification. The prosecutrix was permitted, without objection, to lay bare her life both on the examination in chief and on her cross-examination, at the time she lived in Lodi, then but ten or eleven years old, until the date of the particular act, in 1911, selected by the prosecuting attorney. The record shows that it was with great difficulty the witness was brought to the point of telling her story and then only after much urging by the prosecuting attorney and intimations by the court that she must answer the questions or render herself liable to punishment. Apparently her hesitation was not from a sense of shame or delicacy of feeling or failure to understand the questions or from fear, and yet the substantial facts finally came out only in answer to leading questions in which the prosecuting attorney himself narrated the circumstances in their sequence and the witness answered yes or no as the question seemed to require. According to the testimony of the witness given at the preliminary, defendant's intercourse with her commenced six or seven months before his marriage to her mother and was kept up twice a week, on Mondays and Saturdays; that before that time he had conducted himself with her in a lascivious manner; that after his

marriage he continued this intercourse twice a week up to April, 1911; at the trial she reduced the frequency of inter-. course at Mrs. Sarah Lewis' house, before defendant's marriage, to once a month but adhered to her statement that it had continued twice a week most of the time after his marriage and for six or seven months prior to April, 1911, at the homestead; that it occurred in every instance in the home where they were living at the time—at Mrs. Sarah Lewis' house, where six or eight people were living, young and old, and at the homestead where, at least, a considerable part of the time, Mrs. Johnson lived with the family; that the days were chosen, Mondays and Wednesdays, when her mother went out to work. She testified that she had once, while living in the Lewis house on Washington street and before the marriage of defendant, accused one Masterson of having intercourse with her and she immediately told her mother of the fact. Some investigation followed and she afterward retracted and the investigation ceased. It appeared also that she had been approached by certain boys and certain suggestions were made to her by at least two other men, of all which she promptly told her mother. There seemed to be no lack of confidence between mother and child, and yet she admitted she never told her mother of defendant's advances either at the early stage of his alleged relations nor at any other time, although they were continued unintermittently for over two years. When asked why she did not tell her mother she answered, "I don't know." It was not until her conduct with certain boys with whom she associated led to her being taken before the juvenile court that she divulged her relations with defendant. There was no evidence that defendant had ever been seen in a compromising situation with the child, or that he had ever been seen to show her any affectionate or loving attention or she any toward him—indeed, on the contrary, she admitted that he had corrected her and at times restrained her from going to places he thought improper for her, though she said she bore him no ill-will. The mother of the witness and the adult persons who had lived in the same house with defendant, at his mother's and at the homestead, testified that they never saw or heard of any act of impropriety of defendant toward this child. The story of the particular act, as brought out in the manner above stated, was that it occurred on

Monday, April 17, 1911, in the kitchen; that her mother got
up that morning, leaving her husband in bed and about 8
o'clock went away to work; that witness was working in the
kitchen and defendant asked her to come to bed with him,
which she did. The details of this incident as assented to by
the witness, in response to the questions as put to her, are un-
printable. and disclose a condition of mind in the participants
which should shock the sensibility of persons not abnormally
depraved. Her mother testified that her husband got up from
the bed where they had been sleeping about the time she did
on that April morning; that he went to the barn to do some
work about making a chicken-house and she went with him
and while there called to her daughter to bring some tool that
was needed. Defendant told the same story. The prose-
cuting witness was asked if defendant had not called to her
on that morning to bring this tool and her answer was she
didn't remember. This was Easter Monday and was by this
circumstance fixed in the memory of all these witnesses. If
the mother's testimony was true, the story told by her
daughter was false—both could not be true. It need hardly
be added that defendant as a witness denied ever having had
sexual intercourse with this child. His testimony, generally
consistent, while disclosing under a severe cross-examination
no circumstance in any wise corroborating the story of his
step-daughter, was not calculated to make a favorable impres-
sion on the jury, but in the testimony of the mother there is,
on the face of the record, nothing calculated to discredit her.
Believing in her husband's innocence, it was natural that she
would shield him so far as she could, and it was for the jury
to judge how far this motive would lead her in an effort to
save him.

In many respects the case presents to our minds the most
perplexing problem on the question of the sufficiency of the
evidence we have ever encountered in this class of crimes. It
would seem almost incredible that the defendant could, in
the midst of the surroundings disclosed, have kept up this
almost unbroken, this frequent illicit cohabitation with this
child for so long a period of time and no one have observed
a single incriminating circumstance tending to corroborate her
story. And yet, it is shown that she early developed puberty;
that she had a natural tendency to indulge her sexual passion

and showed no special aversion to improper advances; that there was opportunity notwithstanding the fact, strongly urged, of the many persons in the household; that on the witness-stand she displayed no such weakness of mind as to arouse doubt of her fully understanding the gravity of the occasion and the consequences likely to follow to defendant from her testimony. Nor did she, under a very searching cross-examination, show malice toward the defendant or any motive to shield any other person by falsely fixing her relations with others upon him. The court allowed unusual freedom to counsel in his effort to penetrate and discredit the circumstances of this child's life and her relations with defendant as narrated by her. Her manner and deportment on the witness-stand; her apparent intelligence and appreciation of what she was saying and its consequences, are tests of her truthfulness of which the reviewing court is deprived. We must assume, in the absence of something in the record upon which to base a contrary opinion, that the jury reached a verdict with full realization of their sworn duty, free from passion and prejudice. We must also assume that the learned trial judge was satisfied with the verdict or he would have granted the motion for a new trial. Cases have occurred, some are cited, where the appellate court has felt itself constrained, in the interest of justice, to override the conclusions of jury and trial court, but such cases are rare, and occur only where the uncorroborated testimony of the complaining witness is so obviously and so inherently improbable as to leave the court no recourse, without self-stultification, except to reverse the judgment. But this obvious and inherent improbability must, however, very plainly appear before the reviewing court should assume the functions of the trial jury.

In *People* v. *Kuches,* 120 Cal. 569, [52 Pac. 1003], the court said: "By denying the motion for a new trial the learned judge of the court below has manifested his satisfaction with its sufficiency (the sufficiency of the evidence); his opportunity to form a correct conclusion upon the weight and effect of the evidence was far better than ours, and his conclusion cannot be disturbed." (See, also, *People* v. *Benc,* 130 Cal. 168, [62 Pac. 404]; *People* v. *Logan,* 123 Cal. 414, [56 Pac. 56].) As above intimated, we must find in the record full justification for believing that the verdict was the expression of passion

and prejudice rather than deliberate judgment, before we should interfere. We cannot say that such a condition is here shown.

It is claimed that the court erred in refusing to give the following instruction: "You are instructed that in the crime of rape a person may be convicted upon the uncorroborated testimony of the prosecutrix, but you are instructed that should you find that the testimony of the prosecutrix is not sustained by facts and circumstances corroborating it, you should proceed in your deliberations with great caution, as in the absence of corroborating testimony it is dangerous to find a verdict of guilty."

The following instruction was requested by defendant and refused by the court: "The testimony of children should be received with great caution, and this is especially the case when the children are of tender years and the events they are relating happened a long time previous to the time they are on the stand."

The court instructed the jury as follows:

"The court instructs you that you are the sole judges of the weight of the testimony which has been introduced before you, and that in determining what weight to give the testimony of the prosecuting witness in this case, you should take into consideration her appearance while on the stand, her apparent interest, or lack of interest in the proceedings, if any appear, *her age* and her manner of testifying, and in the light of all her testimony, and of all other evidence in the case, you should give her testimony such weight, and only such weight, as you think under all the circumstances it is entitled to.

"In the consideration of the testimony of the prosecuting witness, you should take into consideration all of the facts and circumstances surrounding the place where the crime is alleged to have been committed, and you should consider all the facts and circumstances at the time and immediately after the offense is charged to have been committed in determining the weight of her testimony and the reasonableness of her story, as tending to show to your minds the credit to be given the same."

Just what effect on the verdict it would have for the court to tell the jury that it would be "dangerous to find a verdict of guilty" is difficult to conjecture. It is quite certain that

the tendency of such a caution would be to greatly weaken the instruction,. concededly correct, that the jury may convict on the uncorroborated testimony of the prosecutrix.   To tell the jury that to do this "would be dangerous" would, we think, be an unwarranted suggestion to come from the court. As to the other instruction, the record shows that the trial occurred in June, and the offense charged occurred in the previous month of April.   The events narrated did not happen a long time previous to the trial, as the instruction assumes. The instructions given by the court, it seems to us, were sufficiently cautionary and admonitory, and that defendant was not prejudiced by the refusal complained of.

The court instructed the jury as follows:

"The direct evidence of one witness who is entitled to full credit is sufficient for the proof of any fact, except perjury and treason.

"If the jury believe the prosecutrix, they can convict on her evidence alone.

"While it is true that the charge of rape is easily made and difficult to defend, yet if you are convinced from all the facts and circumstances in evidence that the defendant is guilty, then it is your duty to so find."

The court also instructed the jury that before they could find the defendant guilty they "must find that each and every fact essential to the establishment of his guilt has been proven beyond all reasonable doubt and to a moral certainty." The jury were given the usual definition of reasonable doubt. The above instructions were followed by the instructions first above considered, and all of them should be taken together in any fair attempt to understand their true significance and meaning and the impression they were calculated to make on the jury.   Appellant selects for his criticism the following: "If the jury believe the prosecutrix, they can convict on her evidence alone."   The objection made is that, under such an instruction, "it was not necessary that the jury should believe the testimony of the prosecuting witness beyond a reasonable doubt in order to find the defendant guilty as charged."   The jury were clearly instructed that every fact essential to the establishment of the charge should be proved beyond all reasonable doubt and to a moral certainty.   It was not necessary that this phraseology should be used in every instruction.   We

must presume that the jury understood from the instructions given them that they were not at liberty to believe the prosecuting witness unless convinced of the truth of her statements beyond a reasonable doubt. If they did thus believe her, they could not have done otherwise than convict the defendant, for it was upon her uncorroborated testimony alone that conviction was based.

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.