[Crim. No. 1663.   Third Appellate District.—March 20, 1939.]

THE PEOPLE, Respondent, v. HARRISON JEFFERSON et al., Appellants.

Ray Manwell for Appellants.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendants were jointly tried and convicted of robbery of the first degree.  It is contended the story of the prosecuting witness is inherently improbable, that the verdicts and judgment are not supported by the evidence, and that the court erred in failing to instruct the jury with respect to the crime of theft incident to the charge of robbery.

Mrs. Alma Robinson, the prosecuting witness, is a young negro woman who worked as a maid at a rooming house called "Cozy Rooms" in Marysville.  The afternoon of October 5, 1938, she walked down D Street to a store, and soon returned toward her home.  She then carried a purse containing only a few cents in cash and a savings bank book showing a credit in the Bank of America of $80.  On her way back she was accosted by the defendant, Mary Ashley, another colored woman, whom she had never before met.  This stranger also carried a handbag.  She introduced herself as Mrs. Smith.  She said she was a widow with three children and that she was working for a family who lived five miles in the country.  After a few moments' conversation she said she would like to introduce her friends.  The two women crossed the street to an automobile which was parked near the Bank of America and Mary Ashley introduced the prosecuting witness to the

other defendants. Ada Albert was introduced as Mrs. Maydell. The witness did not remember the name by which the defendant, Jefferson, was introduced. He sat at the wheel in the front seat of the machine. They were all colored people. Mrs. Robinson and the defendant, Mary Ashley, stood in the street near the sidewalk by the automobile. Mary Ashley stood at her left side. Suddenly, without warning, Mary Ashley snatched the purse from Mrs. Robinson which she promptly opened and examined. At the same time she took a revolver from her own handbag and pointed it at the witness' left side. After hastily examining the purse, Mary Ashley said she found the bank book. Jefferson then commanded Mrs. Robinson to "Do what she [Mary Ashley] says to do, else you will be bumped off, sister. . . . Come on. . . . We are going to get the money." Mrs. Robinson said she was frightened; that she didn't know what might happen. There were pedestrians in sight, but she made no outcry. She went with Mary Ashley to the machine and upon command got in and sat in the back seat. As they reached the curb, Mary Ashley replaced the revolver in her handbag. They drove to the Bank of America. Mary Ashley entered the bank and stood close by the left side of Mrs. Robinson while she withdrew $79 of her account. During that transaction the defendant, Jefferson, stood outside the bank looking in through the window.

The cashier testified that while Mrs. Robinson was withdrawing her money a colored woman stood close by her side. He recognized Mrs. Robinson, but did not know Mary Ashley. He had never before seen her. He said there was nothing unusual in their appearance or conduct to attract his attention. He did not know a hold-up was being carried out in his presence. The women left the bank and entered the machine. As they got into the vehicle Mary Ashley took the money from Mrs. Robinson. After they entered the machine the defendants also demanded of Mrs. Robinson her jewelry. They took from her two small diamond rings, a wedding ring and her wrist watch. They drove out of the city some distance, and stopping near a bridge ordered the prosecuting witness to get out. She did so. The defendants drove away. Mrs. Robinson walked back to town and told her friend, a man by the name of Curley, about the robbery. Together

they presented the case to the sheriff. A complaint was filed and warrants were issued.

The following day the defendant, Jefferson, was arrested in Sacramento. The other defendants were apprehended in New Mexico two weeks later. They were all returned to Marysville. Mrs. Robinson identified each of them. Neither the money nor the jewelry was recovered. The defendants denied their guilt and told the sheriff they had never before been in Marysville. At the trial the defendants failed to take the witness stand in their own behalf. The jury found each of them guilty as charged. Judgments were rendered accordingly. Motions for new trial were denied. From the judgments and orders this appeal was perfected.

We are unable to hold, from the record, that the testimony of the prosecuting witness was false or that her story was inherently improbable. It does not appear to be improbable that the defendants, being colored people, should have attempted to hold up a woman of their own nationality. Nor is it strange that, having discovered she possessed a small bank account in a bank near by, that they should have sought to compel her, under threats of bodily harm, to withdraw the funds. It is true that pedestrians were passing along the sidewalk as the parties to this affair stood in the street by the side of the machine while the revolver was displayed and the threats to "bump her off" were made. But the defendant Ashley stood close by the left side of Mrs. Robinson, and they may have been concealed from the view of the pedestrians behind the machine. The other defendants were sitting in the machine in a very innocent manner. It is also true that other persons were in the bank while the money was being withdrawn, and that Mrs. Robinson might have successfully given a warning of the hold-up, but Mary Ashley then stood close by her side with the revolver in her handbag, and Jefferson stood on the sidewalk looking into the bank. Mrs. Robinson testified that they had threatened to "bump her off" if she didn't do what they demanded of her. She said she was frightened and feared they would carry out that threat. It is not unreasonable to assume she believed the loss of the small sum of $79 was not worth endangering her life by defying her captors and giving an alarm. She did not know how lawless or desperate they were. A brave and de-

termined person might be likely to give a warning under such circumstances. A timid, frightened colored person might not do so. The defendants did not take the witness stand to contradict her story. The credibility of the witness and the reasonableness of her story were matters for the determination of the jury. ██ Even when the evidence may be susceptible of different inferences, an appellate court is not warranted in reversing the judgment. (*People* v. *Hennessey,* 201 Cal. 568 [258 Pac. 49]; *People* v. *Tom Woo,* 181 Cal. 315 [184 Pac. 389]; 8 Cal. Jur. 585, secs. 580, 581.) The justices of an appellate court should not substitute their judgment for the conclusions of the jury and the trial judge and reverse a cause on the ground that the evidence of the prosecuting witness is inherently improbable, unless it is so clearly false and unbelievable that reasonable minds may not differ in that regard. To justify a reversal of a judgment on that ground it should clearly appear that the verdict is the result of passion and prejudice. (*People* v. *Lewis,* 18 Cal. App. 359 [123 Pac. 232]; *People* v. *Antunez,* 28 Cal. App. 740 [153 Pac. 963]; 8 Cal. Jur. 590, sec. 582.) In the Lewis case, *supra,* at page 364, it is said in that regard:

"We must assume, in the absence of something in the record upon which to base a contrary opinion, that the jury reached a verdict with full realization of their sworn duty, free from passion and prejudice. We must also assume that the learned trial judge was satisfied with the verdict or he would have granted the motion for a new trial. Cases have occurred, some are cited, where the appellate court has felt itself constrained, in the interest of justice, to override the conclusions of the jury and trial court, but such cases are rare, and occur only where the uncorroborated testimony of the complaining witness is so obviously and so inherently improbable as to leave the court no recourse, without self-stultification, except to reverse the judgment. But this obvious and inherent improbability must, however, very plainly appear before the reviewing court should assume the functions of the trial jury."

We may not assume that evidence is inherently improbable merely because it is unusual in its nature. (*People* v. *Ralls,* 21 Cal. App. (2d) 674 [70 Pac. (2d) 265].)

Able counsel for the appellants has forcefully suggested a purpose on the part of the defendants different from that of robbery, as a motive for the perpetration of the crime, which is not unreasonable. But that theory does not appear in the record on appeal. It should have been presented at the trial or upon the motion for a new trial. This court may not be permitted to speculate upon a motive of the defendants which is not disclosed in the record.

For the reasons assigned, we are also of the opinion the verdicts and judgments are adequately supported by the evidence.

■ The court did not err in failing to instruct the jury upon the subject of theft as distinguished from that of robbery. No such instructions were offered by the defendants. The snatching of property from the possession of another has been held to constitute robbery when it is seized by means of force or fear. (*People* v. *Church,* 116 Cal. 300 [48 Pac. 125]; sec. 211, Pen. Code.) In the present case the snatching of the purse by means of force and fear perpetrated by the use of a deadly weapon and a threat to ''bump off'' the prosecuting witness if she refused to comply with the defendants' demands was followed by forcibly stealing her jewelry and procuring her money from the bank under a continuation of the same threats and fear. ■ Where property is snatched from the person of another or procured by threats of bodily harm or under circumstances reasonably creating grave apprehension on the part of the owner of receiving bodily injury at the hands of the thief, the crime amounts to robbery. (*People* v. *Dahl,* 113 Cal. App. 224 [298 Pac. 59]; *Tipton* v. *State,* 23 Okl. 86 [212 Pac. 612, 31 A. L. R. 1074]; *Routt* v. *State,* 61 Ark. 594 [34 S. W. 262]; *People* v. *Anderson,* 59 Cal. App. 408 [211 Pac. 254].) Under the circumstances of this case, where the evidence clearly shows that the property was seized from the person of another by means of force or fear, the crime of theft is not involved and the defendant may not complain of a failure to charge the jury that the accused might be convicted of theft, in the absence of a request for such an instruction. (*People* v. *Modina,* 146 Cal. 142 [79 Pac. 842]; *People* v. *Welsh,* 7 Cal. (2d) 209 [60 Pac. (2d) 124]; *People* v. *Monte-*

*zuma,* 117 Cal. App. 125, 132 [3 Pac. (2d) 370, 4 Pac. (2d) 285] ; *People* v. *Church, supra;* 22 Cal. Jur. 886, sec. 42.)

The judgments and orders denying the motions for new trial are affirmed.

Pullen, P. J., and Tuttle, J., concurred.