[Crim. No. 4527. Second Dist., Div. Two. Mar. 23, 1951.]

THE PEOPLE, Respondent, v. WILLIAM CHARLES BLANKENSHIP, Appellant.

Morris Lavine for Appellant.

Fred N. Howser, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

WILSON, J.—Defendant was charged by information with ten felony counts arising out of assaults on four women and with a prior conviction of attempted kidnapping. He admitted the prior conviction and after trial before the court without

a jury he was found guilty of counts IV, VI, VII and VIII. The other six counts were dismissed. Defendant's motion for new trial was denied and he was sentenced to the state prison for the term prescribed by law. He has appealed from the judgment and "orders."

As grounds for reversal defendant contends: (1) Count VII of the amended information fails to state a public offense; (2) the evidence is insufficient as to the convictions on each count; (3) the convictions as to counts IV, VII and VIII are contrary to law due to a variance between pleading and proof; (4) his rights under the due process clause of the Fourteenth Amendment to the Constitution of the United States have been violated.

### COUNT VII

In count VII of the amended information defendant was charged with the crime of "assault with intent to commit rape" in that he did "willfully, unlawfully and feloniously make an assault upon _____ [naming her] a female person not then and there the wife of said William C. Blankenship, with the intent then and there and by force and violence to have and accomplish an act of sexual intercourse with and upon said _____." Defendant contends the information is insufficient to charge him with the offense of assault with intent to commit rape because the type of rape alleged to have been committed is that specified under subdivision 3 of section 261 of the Penal Code and there is no allegation that "she resisted but the resistance was intended to be overcome by force and violence."

Although defendant did not demur or otherwise object to the sufficiency of the information in the trial court and raises the question for the first time on appeal, if the facts stated in the information do not constitute a public offense the objection is not waived by his failure to demur. (*People* v. *Nelson*, 58 Cal. 104, 107; *People* v. *Schoeller*, 96 Cal.App.2d 61, 62 [214 P.2d 565]; *People* v. *Schiaffino*, 73 Cal.App. 357, 359 [238 P. 725]; *People* v. *McKean*, 76 Cal.App. 114, 116 [243 P. 898].)

An information is sufficient if it contains in substance a statement that the accused has committed some public offense therein specified. "It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused." (Pen. Code, § 952.) In *People* v. *Girr*, 53 Cal. 629, an indictment charging that the

defendant "did willfully, feloniously, and of his malice afore-thought commit an assault upon the person of _____ [named] with intent her, the said _____ [named] then and there to rape" was held to be sufficient. In *People* v. *Estrada,* 53 Cal. 600, it was held that in an indictment for assault with intent to commit rape it was not necessary to allege that the person assaulted was not the wife of defendant; that the question of intent with which the assault was committed is a question of fact and if there is evidence tending to prove the intent was as alleged in the indictment, the verdict will not be set aside on the ground the evidence is insufficient to sustain it. In *People* v. *Burns,* 63 Cal. 614, defendant was accused by information of feloniously and burglariously entering a certain house with intent to commit rape. Objection was made that the information did not state under which set of circumstances specified in section 261 the act was intended by the defendant to be accomplished. The information was held to be sufficient.

Defendant was not charged under section 261 with the crime of rape but was charged under section 220 of the Penal Code which provides: "Every person who assaults another with intent to commit rape" is punishable as therein specified. The offense is not described. Since the charge is in the language of the statute the information is sufficient.

The events which preceded the alleged assault are as follows: The prosecutrix had advertised for work at home, stating in the advertisement that she was desperately in need of employment. Upon her return home after a short absence her husband informed her a Mr. Al Anderson had telephoned and left a number for her to call. She called the number and talked to a person who identified himself as Al Anderson. He told her he needed help immediately and described the type of work which was cutting stencils and mimeograph work. He told her the rate of pay and urged her to start work at once. He also asked her if she were married and if she were attractive. He then made arrangements to meet her at the corner of Figueroa and Washington Boulevard at 8:30 that evening. About five minutes after 9 defendant drove up and identified himself as Al Anderson. The prosecutrix got into the car and they drove away. He did not state where they were going but in their telephone conversation he had told her it was some distance out of town and he would furnish the transportation. After they had driven for some time they came to a small town. Defendant appeared surprised and said,

"This looks like San Pedro. If it is we have driven miles farther than we should have." He then drove into a filling station and asked for directions. They drove on, going uphill, and finally got onto a bad road. Defendant told the prosecutrix they were going to his ranch and the roads were bad. They turned off into a little road and after driving for several minutes defendant stopped the car and said, "This is it." She asked him, "What do you mean, this is it?" Defendant replied, "Just what I said, this is it." He swung around and in his left hand she saw a knife blade. She begged him not to hurt her and he said, "I am not going to hurt you, do as I say and you will not get hurt." He told her to get into the back seat. She reached for the door and he said, "Don't reach for that door," and brought the knife practically in front of her face. She asked him what he wanted her to do and he said, "Crawl over the seat." She got into the back seat because he was armed and she was not and she thought it would be useless to fight. Defendant got into the back seat at the same time and told her to take off her clothes. She tried to "stall" and offered him money which he refused. At that time she told him to put away the knife and he did so. She had all her clothes off with the exception of her pants when police officers arrived and flashed lights into the car. She tried to open the door but could not find the door handle. She told defendant he had better open the door and then a policeman opened the door and flashed a light in her face and asked what was going on in there. She grabbed the officer by the arm and said, "Save me, get me out of here." He asked her if the man had brought her there against her will and she said, "Yes," and jumped out of the car and ran to the police car and got into the back seat.

Defendant's contention that the evidence is insufficient is upon the ground there was no resistance shown upon the part of the prosecutrix. He points to the long drive out into the wilderness, their stopping, and finally parking out on a lonely road and the fact that she undressed and that she allowed herself to be photographed by the police officers with only her pants and brassiere on as proof of her lack of resistance.

Such evidence when considered with that hereinabove related supports a finding that defendant assaulted the prosecutrix with the intention of committing rape and with the intention of overcoming her resistance with force and violence. He answered her advertisement and knew she was in need of

work. He offered her employment and told her it was outside Los Angeles and he would furnish transportation. He told her she was to work at his ranch and it was not until he stopped and swung around with a knife blade in his hand, stating, ''This is it,'' that she knew something was wrong. He told her to get into the back seat and that he would not hurt her if she did as he told her to do. She offered him her coin purse and he refused to take it. He told her to take off her clothes and he got into the back seat with her and removed his trousers. This evidence does not indicate consent but that the victim was afraid to offer resistance because defendant threatened her with a knife; that she removed her clothing not willingly but because she was afraid to refrain from doing so. Insofar as the picture is concerned, she consented to have it taken in a state of undress because the officers requested it, presumably for use as evidence. Considering their position of authority and her mental state at the time it does not indicate her consent to the acts of defendant.

### Count IV

—————————, a housewife, was at home alone on November 2, 1949, between 2:00 and 2:15 in the afternoon when a man, whom she positively identified as defendant, rang her doorbell and inquired concerning the purchase of her house which was for sale. He was alone and told her he would like to look through the house. She brought him into the house and showed him through the various rooms. He then asked to see her title papers. She went to her linen closet to obtain them and reached in the lower shelf. As she rose up she felt a blow on the head and automatically screamed. Defendant put his left arm around her, holding her shoulders in front and his right hand over her mouth and said, ''If you scream I will kill you.'' He took his hand away from her mouth and she said, ''I am not going to scream, what are you going to do?'' Defendant said, ''You get on the bed and I won't hurt you.'' She put her hands to the top of her head and when she took them down they were bloody. She was frightened. She did not know what he had hit her with and she was afraid he might kill her. Defendant, who was behind her, pushed her to the bed. When they reached the bed he turned her around and started to push her down on the bed and as he pushed her she pushed him back. He shoved her onto the bed, raised her skirt, removed her pants and shoes,

unzipped his trousers and forced himself upon her. She did not try to resist at that time and when the act was completed he got up and picked an object off the dresser which appeared to her to be a lead pipe. Blood was running down her neck from the cut on her head. In addition to the blow on her head she had a cut over one eye and a blue mark on her cheek. Her mouth was badly cut inside and there was a cut below her lip.

Defendant asserts that the evidence fails to prove that the prosecutrix resisted and that her resistance was overcome by force and violence; that she testified she did not resist. He admits she testified she did not resist because of threats but contends he was not charged under subdivision 4 of section 261 of the Penal Code which defines rape as an act of intercourse where the prosecutrix ''is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution'' but that the amended information charges him with a violation of subdivision 3 of that section defining rape as an act of intercourse where the resistance of the prosecutrix ''is overcome by force or violence.''

■ Defendant waived his right to object to an alleged variance between the pleading and the proof by failing to raise the objection in the trial court. (*People* v. *Abila,* 137 Cal.App. 26, 28-29 [29 P.2d 796] ; *People* v. *Yachimowicz,* 57 Cal.App.2d 375, 380 [134 P.2d 271].) ■ Moreover, the variance is immaterial. Regardless of the subsection referred to in the information, if the evidence brings the case within any of the subsections of section 261, the offense of rape has been proved by the prosecution. (*People* v. *Craig,* 17 Cal.2d 453, 455 [110 P.2d 403] ; *People* v. *Cassandras,* 83 Cal.App.2d 272, 276 [188 P.2d 546].)

■ That defendant used force and violence is established by the evidence. He struck the prosecutrix on the head hard enough to cause it to bleed; he inflicted other injuries on her; he grabbed her from behind and held her mouth to prevent her from screaming; when she asked him why he hit her, defendant replied, ''I am sorry I hit you; I didn't mean to but most women won't give in to me''; she was afraid he would kill her; he pushed her into the bedroom and onto the bed; she pushed against him hard enough to leave blood from her hands on the lapels of his coat. The fact that after he shoved her onto the bed she offered no further resistance does not signify consent to defendant's act. ■ A submission induced by fear is not acquiescence. ■ It is primarily for the woman

who is attacked to decide to what extent, if at all, she can safely resist. (*People* v. *Calliham*, 81 Cal.App.2d 928, 931 [185 P.2d 342] ; *People* v. *Lay*, 66 Cal.App.2d 889, 893 [153 P.2d 379] ; *People* v. *Cassandras, supra.*) The evidence is ample to sustain a conviction of forcible rape.

## COUNT VI

 _____, an 18-year-old schoolgirl, advertised in the paper for work as a baby sitter. Defendant came to her house between 7 and 8 in the evening and asked if she was a baby sitter and if she wanted a job. She replied that she did and he told her that his wife was sick, that he had two children and needed someone to take care of them while he took his wife to the hospital. She got in defendant's car and drove off with him. She asked him where he lived and he said in Palos Verdes. After they had driven for 10 or 15 minutes defendant turned off onto a dirt road and stopped near a fence. There were no houses in the vicinity. Defendant said, "This is where we stop; this is the end." She asked him what he meant and he said, "You know." She tried to talk him out of it. He told her to get into the back seat. She did not want to do so and he became "nasty" about it. Defendant had his hand behind his back and he had something in his hand. He told her he would hurt her unless she got into the back seat. He told her he would not hurt her if she would do as he said. She tried to get out of the car but could not find the door handle to open it. She offered to get out and walk back and he told her she was going to walk anyway. She finally got into the back seat and he told her to remove her clothes. She complied and he committed an act of intercourse.

Defendant contends that because the victim did not physically resist, because there was no scuffle, because she got into the back seat without his assistance and removed her clothes herself the evidence "fails to measure up to the language of the statute of 'threat of great and immediate bodily harm, accompanied by apparent power of execution.' " This contention is without merit. The circumstances are not unlike those in *People* v. *Cassandras*, 83 Cal.App.2d 272 [188 P.2d 546], in which the court held that the "evidence shows consent induced by threats of the type contemplated by the code section" and that it was ample to sustain the conviction. In the instant case the victim was an 18-year-old schoolgirl. It was nighttime and defendant had taken her to a secluded spot off

the main highway. He told her he would hurt her unless she got into the back seat. He told her he would not hurt her if she would do what he said. When he told her he would hurt her his voice was forceful and he gave her the impression he would kill her. The evidence is sufficient to sustain the conviction.

## COUNT VIII

 _____, a schoolgirl 14 years of age was at home when defendant came to her house and asked if she was the girl who was to baby sit for him. She said she was and her father accompanied her to defendant's car. She entered and they drove away. Defendant directed his course to some oil wells where he stopped. He told her he had to look at an oil well and left the car and went around the well. When he came back he had a knife in his hand. He told her if she did what he told her to do she would not be hurt. He told her to get into the back seat and to remove her clothes. While she was in the front seat he told her he would cut her neck from ear to ear. She told him he was crazy and he slapped her face. She got into the back seat and removed her clothes. Defendant committed an act of intercourse during which time he kept the knife in his hand. She got dressed and he put her out of the car warning her not to tell anybody or he would kill her. On the way home she found her toe had been cut.

Defendant raises the same objection as that raised with respect to count IV, namely, that he was charged in the amended information with having overcome the victim's resistance by force and violence whereas she testified that she consented due to fear of great and immediate bodily harm. This objection is without merit as has been hereinabove stated and the evidence sustains the conviction.

 Defendant also challenges the evidence as to his identification. In each case the victim positively identified the defendant in addition to which there is corroborating evidence.

 Defendant's contention that his rights under the due process clause of the Fourteenth Amendment have been violated because he was charged with one offense and convicted of another is likewise untenable. As stated in *People* v. *Craig*, 17 Cal.2d 453, 455 [110 P.2d 403], under section 261 of the Penal Code "but one punishable offense of rape results from a single act of intercourse, although that act may be accomplished under more than one of the conditions or circumstances specified in the foregoing subdivisions. These subdivisions merely define the circumstances under which an act of inter-

course may be deemed an act of rape; they are not to be construed as creating several offenses of rape based upon that single act."

Judgments and order denying motion for new trial affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 19, 1951.