[Crim. No. 4701. Second Dist., Div. Two. Dec. 7, 1951.]

THE PEOPLE, Respondent, v. DANIEL M. HARRIS, Appellant.

Earl C. Broady for Appellant.

Edmund G. Brown, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant was convicted of two distinct felonies, (1) of "copulating" his mouth "with the sexual organ" of the prosecutrix (Pen. Code, § 288a) and (2) of rape upon the same person by the exercise of force and violence. He demands a reversal of the judgment on the ground that the evidence was insufficient to support the implied finding on either count.

On February 1, 1951, the prosecutrix, a factory worker 24 years of age, resided in the southern portion of Los Angeles about 6 miles from the civic center. Having alighted from a streetcar about 1 o'clock in the morning, she walked along the sidewalk toward her home. While thus proceeding she observed appellant drive by her, return on the same street and, having again directed his automobile toward her, he stopped, stepped up beside the prosecutrix, and grabbed her by the neck and right arm. Undaunted after his modest approach, in language that would blush the cheeks of a hardened mistress of a brothel, appellant startled the young woman with the announcement that he desired to lick her private parts and then he would let her go. She "struggled a little but then he forced me and dragged me into his car . . . we still argued a few minutes. Then he unbuttoned my slacks, pulled them down a little ways, then went farther; well, we argued, then he finally jerked them down, took them off," while she protested and attempted to keep them on. She asked his purpose. He did not want her money but just "that." As he placed her under the steering wheel she told him to throw out his knife which she had seen while they were on the sidewalk.

After having placed his mouth on the *os uteri* of her body he thereupon "tried to have relations . . . he got mad . . . he wasn't ready to." When she resisted he pushed her down and made her take his sexual organ into her mouth. He then inserted it into her and accomplished an act of carnal intercourse. On learning by his inquiry that she was unmarried he asked her to be his girl friend, and to meet him the following morning at a popular street intersection. She agreed to meet him and kept her promise. Having reported the crime to the police, she met him at the corner agreed upon where officers took appellant into custody.

The victim testified that she was in fear of bodily harm as appellant committed his acts; that she did not think he would let her go; that "he might beat me; he said he had a knife . . . he never hit me . . . no real violence because

I pretty well was afraid so I gave in.'' In his conversation with the officers, appellant at first denied having had sexual intercourse. When they told him they had witnesses, he admitted the act but asserted it was by mutual agreement; that she told him she was married to a colored man. At a subsequent interview he admitted that (1) he had expressed to her his desire for sexual intercourse, (2) had kissed her private parts; (3) requested her to play with ''it''; (4) she kissed his sexual organ; (5) he had an act of intercourse with her. Thereupon, appellant freely wrote substantially the same confession he had made orally denying that he had a knife on the occasion of his bestial adventure but only a can opener that fell on the street.

### Section 288a

That the court's finding of appellant's violation of section 288a is justified by the proof was not contradicted. Where sufficient facts are proved and believed by the court to warrant an inference of guilt the appellate court is powerless to upset the judgment. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].) Its only function is to ascertain whether upon the face of the record sufficient facts could not have been found to warrant the inference of guilt. A scrutiny of the evidence serves only to justify the judgment. It was in the dead of night on a silent street when he, displaying a knife, suddenly seized the young woman and pulled her into his automobile, demanding the privilege of caressing her private parts. He removed her clothing as she protested. Not only did he declare his purpose but he lewdly and lasciviously ''placed his mouth on her private parts,'' a felony. She was an utter stranger to him; but he was bent upon the consummation of his deliberate design to gratify his debased and depraved desires. The still hour of midnight, the solitude of the place, the loneliness of the prosecutrix, the brutal boldness of appellant, his vile and resolute purpose, and withal, his avowed, obscene desire—these omit nothing that was essential to the establishment of his guilt even though he had never spoken to the officers. But to them he confessed his criminal scheme and its achievement.

Because the chain of proof is complete and because he offered not a word of testimony in rebuttal, the finding of a violation of section 288a cannot be impeached. (*People* v. *Wheeler*, 61 Cal.App.2d 394, 395 [142 P.2d 938] ; *People* v. *Milo*, 89 Cal.App.2d 705, 707 [201 P.2d 556] ; *People* v. *Cole-*

*man,* 53 Cal.App.2d 18, 26 [127 P.2d 309].) It cannot be upset unless the admitted acts of appellant do not constitute a violation as contended by appellant.

█ The testimony of the prosecutrix and the confessions of appellant are in accord; he placed his mouth on her private parts; he did so for no purpose other than to gratify his lustful desires and to arouse in the prosecutrix a sexual animation, all contrary to the word and the spirit of section 288a. He seeks refuge behind *People* v. *Angier,* 44 Cal.App. 2d 417 [112 P.2d 659]. Angier had been convicted on the testimony of two infants, 5 and 7 years of age. This court was impressed that the mouth of the accused could not have touched the bodies of the children. Such evidence was an indispensable element in the successful prosecution of such crime. On reaching that conclusion we were led into a discussion of the significance of the word "copulate." While that discourse was philologically correct it was calculated to lead to the erroneous doctrine that the use of the word in section 288a signifies a legislative intent that an offender of the statute is guilty only when he has committed the repulsive act of sex perversion. Such was not the purpose of the lawmakers or the intention of this court. A person is guilty of violating the statute when he has placed his mouth upon the genital organ of another. This is the generally accepted interpretation of the statute. (See *People* v. *Milo,* 89 Cal.App.2d 705, 708 [201 P.2d 556]; *People* v. *Coleman,* 53 Cal.App.2d 18, 26 [127 P.2d 309].) The Angier decision is not pertinent unless the factual situation under judicial consideration is in all essential details identical with those there adjudicated. (*People* v. *Owen,* 68 Cal.App. 2d 617, 619 [157 P.2d 432].)

### RAPE WAS ESTABLISHED

It is contended that there could have been no rape as charged for the reason that the prosecutrix acquiesced in the assault upon her. Nothing could be farther from the truth. When a young white woman returning home from her work meets a strange male person of the Negro race in the dead of night in a quiet vicinity and he exhibits a knife as he demands that she submit to carnal intercourse with him and pulls her into an automobile, lays her body upon the seat, proceeds to remove her clothing, compels her to perform the nameless act to stimulate his own amorous impulses, it would border upon the stupid to find that she freely acquiesced in his acts as he ravished her body. While she made

some resistance, it may be safely presumed that she would have rebelled with a vengeance but for her fear of bodily harm. Why should any young woman under the circumstances described consent freely to the devastation of her virtue and the violation of her body? Appellant's attempt in his closing brief to asperse the character of the prosecutrix is not commendable. There is not the slightest proof to justify such inference aside from her strategy designed to aid her escape. But if she had been as vile and base as the daughter of Herodias appellant's crime would not be extenuated.

Not only did appellant reveal a consciousness of guilt by his conflicting versions of the episode, but her narrative resounded from the witness stand without a word of opposition or contradiction. His sole reply to the charge that he had a knife for the parley was that it was a can opener in his hand. If it had been, could the "shiney" can opener have been in his hand for any purpose other than to inspire a fear of its possessor? Her yielding to a superior force rather than suffer the possible consequences was more discreet than to cry up to the stars and be left in the gutter unconscious, if not dead. ■ Any instrument that indicates a potential application of force to achieve its possessor's desires establishes the element of violence and whether it does appear to be fraught with peril to another is a question of fact for the trial court. (*People* v. *Coleman,* 53 Cal.App.2d 18, 26 [127 P.2d 309]; *People* v. *Blankenship,* 103 Cal.App.2d 60, 67 [228 P.2d 835].)

■ It is for neither the aggressor in such a crime nor for the courts who try him to determine the exact point to which the prosecutrix could with safety have carried her resistance. When she determines that her opposition had been carried to the limits of safety and that she could have ventured no further without peril to her life or safety, it is then for the trial court to determine only whether her fears were reasonably grounded. (*People* v. *Tollack,* 105 Cal.App.2d 169, 172 [233 P.2d 121].) ■ The kind of physical force that may induce fear in the mind of a woman is immaterial . . . it may consist in the taking of indecent liberties or of embracing and kissing her against her will. (*People* v. *Bradbury,* 151 Cal. 675, 677 [91 P. 497].) ■ A submission induced by fear is not acquiescence. (*People* v. *Blankenship, supra,* at p. 66.)

■ Appellant's argument that he approached the prosecutrix merely to ascertain whether she would consent to intercourse is a vain attempt to bolster his case. A man who seeks another to join and collaborate with him in any enterprise never begins negotiations by flashing a weapon by which force is applied; does not seek a friend after midnight of early February in a lonely area far from the "white lights"; does not grasp his friend by the neck and force him into the seat of a motor car beneath the steering wheel! His victim was a strange woman and appellant did not accost her in a friendly manner. ■ His argument that because, during the removal of her slacks, she said. "not so far," she thereby indicated consent, is equally absurd. Those words of the prosecutrix relate to his previous promise that if he might kiss her private parts he would let her go. *People v. Bales,* 74 Cal.App.2d 732 [169 P.2d 262], does not avail appellant. The victim there was a familiar acquaintance of the accused. They had imbibed spirituous liquors together.

■ The final contention is that the testimony of the prosecutrix was inherently improbable in that she did not cry for help. It hardly behooves a man who has forced a woman into an automobile and raped her to argue in his desperation that she should have shrieked out her fears at the time! He chose a time and a place and a method of "approaching" her without first consulting her and advising her to arouse the natives to defend her. If the affair was all so simple, why did not appellant mount the witness stand and explain it to the judge? The reasons for the failure of the prosecutrix to make an outcry have been made clear by the recitals herein. Whether they were reasonable was a fact for the trial court. (*People v. Tollack, supra*; *People v. Meichtry,* 37 Cal.2d 385, 389 [231 P.2d 847]; *People v. Pullins,* 95 Cal.App.2d 902, 905 [214 P.2d 436].)

Affirmed.

McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 3, 1952.